**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

RASHALL M. BRACKNEY-WHEELOCK, PH.D.,

    *Plaintiff,*

v.                                    Civil Action No.:  3:22-cv-35

CITY OF CHARLOTTESVILLE, et al.,

    *Defendants.*

## BRIEF IN SUPPORT OF FORMER CITY MANAGER CHARLES "CHIP" BOYLES'S MOTION TO DISMISS

COMES NOW Defendant Charles "Chip" Boyles ("Boyles"), the City Manager of the City of Charlottesville from February 15, 2021 to October 29, 2021, by counsel, and in support of his previously-filed Motion to Dismiss the Complaint submits six exhibits and the following authorities and argument:

## INTRODUCTION

On June 15, 2022, Plaintiff, former City of Charlottesville Police Chief Rashall M. Brackney-Wheelock, Ph.D. ("Brackney"), filed a 73-page 11-count Complaint with 22 exhibits, totaling 273 pages incorporated into her complaint against her former employer, the City of Charlottesville, and ten individuals, including now former City Manager Charles "Chip" Boyles, relating to then City Manager Boyles's September 1, 2021 termination of her admitted *at will* employment agreement with the City of Charlottesville.

City Manager Boyles's decision as City Manager to terminate Brackney as Police Chief in accordance with her employment agreement without cause on September 1, 2021 was difficult for him. It was not based on her race, color, or gender, or in retaliation for her personnel decisions and

discipline of police officers, which he publicly supported. As he stated in his actual Op-Ed published in *The Daily Progress* on September 17, 2021, "Recently, I made the decision to terminate the employment agreement of Dr. RaShall Brackney, Charlottesville's chief of police. **It was not easy"** (emphasis supplied). Following his announcement of the termination, he was "confronted with such anger and vitriol." He admitted "Making unpopular decisions, however, comes with the job" as City Manager. Explaining his subjective analysis, he noted in the Op-Ed that despite success in modernizing the department, he was confronted with surveys of the police which revealed substantial concerns of trust and confidence in her leadership. Factoring in he stated "known strained relationships across government, community, religious and regional stakeholder groups" and stating the critical importance to these relationships and his conclusion that with internal and external strife present, his opinion was that it was "imperative to act." Noting that the situation was "growing out of control," he decided to act, stating in his Op-Ed that "So as your city manager, I took decisive action to prevent key leadership positions—which were in jeopardy of becoming vacant—from erupting into deeper divides within the department." (Boyles Exhibit 5). While he noted in the Op-Ed that "In hindsight, I would have engaged the City Council more directly in my deliberations and worked with Chief Brackney to develop an improvement plan," the fact was, as he explained, "I just did not have the luxury of time" and, as he explained, found the moment "critical to act." Boyles further elaborated on his decision-making process at the public virtual City Council meeting on October 4, 2021 and responded to questions from City Council. A public record recording of that entire meeting is available at: https://boxcast.tv/channel/vabajtzezuyv3iclkx1a?b=yctaetmu7 eayh8xkplgk, which includes his statement at 4:11:35 of the link along with questions from Council and Councilors' comments during the "Police Chief Termination" extended portion of the public City Council Meeting. In summary, he explained that he had found out that several department leaders

were going to leave very shortly. In his opinion as City Manager, he needed to change immediately – so he did.

In Brackney's Complaint and incorporated exhibits (Doc. 1 & Docs. 1-1 to 1-22)  she attempts, but fails, to allege three Virginia common law and statutory claims against Boyles premised only on a claim to supplemental jurisdiction in this court as to Boyles, to-wit:

FOURTH CAUSE OF ACTION – Tortious Interference with Employment Contract;

EIGHTH CAUSE OF ACTION – Defamation (*Va. Code Ann.* (1950) § 18.2-417); and

NINTH CAUSE OF ACTION – Business Conspiracy (*Va. Code Ann.* (1950) § 18.2-499 et. seq.)

The other causes of action Brackney attempts to allege in her Complaint are for attempted claims solely by their nature against Co-Defendant City of Charlottesville where Brackney was employed as Police Chief pursuant to her *at will* Employment Agreement, which was executed by her and former City Manager Maurice Jones on behalf of the City of Charlottesville. Brackney's Complaint Exhibit F (Doc. 1-6).

In her First, Second, Third, and Fifth Causes of Action, Brackney attempts to assert violations of Title VII of the Civil Rights Act of 1964 against her employer she identifies as "Defendant" at the relevant time, which based on Exhibit F (Doc. 1-6) was the City of Charlottesville. Under settled law, no Title VII claim is alleged against Boyles since individual employee liability is foreclosed in any action under Title VII, *Lissau v. Southern Food Serv.*, 159 F.3d 177, 180-81 (4th Cir. 1998).

Similarly, Brackney's attempted Virginia statutory Sixth Cause of Action for alleged violation of § 2.2301 of the Virginia Code by her employer "Defendant" (the City of Charlottesville), as well as her "in the alternative" Tenth Cause of Action for an alleged violation by her employer of the

Virginia Human Rights Act (Va. Code §§ 2.2-3900-3908) both are necessarily asserted against the City of Charlottesville only since the City was her employer.

Brackney's Eleventh Cause of Action attempts to allege a claim under Virginia law solely against the City of Charlottesville (see § 2.2-3713 *Va. Code Ann.* (1950)) for an alleged violation by the City of the Virginia Freedom of Information Act ("VFOIA") caused by its VFOIA officer's alleged failure to produce all the records she requested from the City in her VFOIA requests on September 18, 2021 and October 14, 2021 (Doc. 1-22, Exhibit V). Under VFOIA, the relief requested by Brackney in her Complaint is not even available as a remedy under the express terms of VFOIA (see § 2.2-3713 (A)) and no facts are alleged sufficient to support any plausible claim for a violation of § 2.2-3704 (*Va. Code Ann.* (1950)).

Finally, Plaintiff's "in the alternative" Seventh Cause of Action for an alleged violation of Article I, § 11 of the Virginia Constitution to be free from governmental discrimination is asserted by Brackney solely against the City of Charlottesville. Article I, § 11 of the Virginia Constitution provides in pertinent part:

> "That no person shall be deprived of his life, liberty, or property without due process of law; that the General Assembly shall not pass any law impairing the obligation of contracts; and that the right to be free from any governmental discrimination on the basis of religious conviction, race, color, sex, or national origin shall not be abridged, except that the mere separation of sexes shall not be considered discrimination."

Under Virginia law, there is no private right of action under Article I § 11 of the Virginia Constitution. A private right of action by Brackney to enforce a claim under the Constitution of Virginia only arises if the provision to be enforced is self-executing. Simply stated, Brackney cannot assert a cause of action under Article I, § 11 of the Virginia Constitution unless that section is self-executing. *Gray v. Virginia Sec'y of Trans.*, 276 Va. 93, 103 (2008). Article I, § 11 in the Virginia Constitution Bill of Rights contains provisions of a negative character only. See Va. Const. Art. I, §

4

11 (in pertinent part prohibiting government discrimination upon the basis of … race, color, sex…"). However, since Section 11 of Article I does not contain express self-execution language, it can only be self-executing under the third prong of the applicable test set out in *Robb v. Shockoe Slip Found.*, 228 Va. 678, 681 (1985) for such actions if the section "supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced." *Robb* at 681. The third prong of *Robb* limits a private right of action to only those circumstances in which a party challenges laws enacted by the General Assembly or **ordinances adopted by localities** (emphasis supplied). See *Adams Outdoor Adv. v. City of Newport News*, 236 Va. 370 (1988) (ordinance regulating billboards); *Blue Horseshoe Tattoo, V, Ltd. v. City of Norfolk*, 72 Va. Cir. 388 (2007) (ordinance banning tattoos). Brackney does not challenge a local Charlottesville ordinance. Accordingly, since the Virginia Constitution section relied on by her is not self-executing, her Seventh Cause of Action fails to state a cause of action against the City or anyone else.

The factual allegations contained in the Complaint that Brackney asserts as to Boyles in support of the only Virginia law causes of actions against former City Manager Charles Boyles are set forth in the Argument section of this brief with respect to each of those causes of action. Boyles specifically also incorporates herein the **FACTS** set forth by the City of Charlottesville in its Brief in Support of its Motion to Dismiss. Further, Boyles specifically incorporates the City of Charlottesville's and other individual City defendants' argument, authorities, and exhibits in support of his arguments and Motion to Dismiss.

## STANDARD OF REVIEW FOR MOTION TO DISMISS UNDER RULE 12(b)(6) F.R.C.P. AND DOCUMENTS THE COURT CAN CONSIDER IN RULING ON THE MOTION

In order to survive a Rule 12(b)(6) F.R.C.P. motion, Brackney's Complaint (Doc.1 & 1-1 to 1-22) must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is

plausible on its face'" against each defendant. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008). The Complaint's factual allegations must produce an inference of liability strong enough to push the Plaintiff's claims "across the line from conceivable to plausible." *Iqbal* at 683. Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), not only must the Complaint contain facts sufficient to state a claim for relief that is plausible on its face, the Complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly* at 555. When a complaint pleads facts that are merely "consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly* at 557. In *Iqbal*, the United States Supreme Court stated that two working principles underlie its earlier decision in *Twombly*. While a court reviewing a Rule 12(b)(6) motion must accept as true all of the factual allegations contained in a complaint, **it is not bound to accept legal conclusions, including those couched as factual allegations** (emphasis supplied). *Iqbal* at 679. The Court is not required to "accept the (plaintiff's) legal conclusions drawn from the facts, **nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments.**" (emphasis supplied). *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 n.26 (4th Cir. 2009). Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal* at 679; *Twombly* at 556. In determining whether a complaint states a plausible claim for relief, the court engages in a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 679. Where actual "well pleaded facts" do not permit the Court to infer more than the mere "possibility of misconduct," the pleader is not entitled to relief. *Iqbal* at 679. Mere formulaic recitals of the elements of a cause of actions supported by mere conclusory statements do not suffice to state a plausible claim for relief. *Iqbal* at 678.

In order to state a plausible claim against an individual the complaint must plead how **each** individual acted personally in any claimed deprivation. To establish personal liability for example,

under § 1983, however, the plaintiff must "affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotation marks omitted). That is, the official's "own individual actions" must have "violated the Constitution." See *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009).

The law is clear that "in reviewing a Rule 12(b)(6) dismissal , [courts] are not confined to the four corners of the Complaint." U.S. ex. rel. *Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F. 3d, 131, 136 (4th Cir. 2014). Documents that are explicitly incorporated into the Complaint by reference, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and those attached to the Complaint as exhibits (see Rule 10 F.R.C.P.) may be considered. The Court may also take judicial notice of matters of public record. *Philips v. Pitt County Mem. Hosp.*, 572 F. 3d 176, 180 (4th Cir. 2004). *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004). See also G*oldfarb v. Mayor and City Council of Baltimore*, 791 F. 3d 500, 508 (4th Cir. 2015) (noting that a court does not convert a motion to dismiss to a motion for summary judgment when it takes judicial notice of public records).

While ordinarily the Court may not consider under Rule 12(d) F.R.C.P. any documents that are outside of the Complaint, or not expressly incorporated therein, on a Motion to Dismiss, *Braun v. Maynard*, 652 F.3d 557, 559 (4th Cir. 2011), an exception to that principle allows a Court to consider facts and documents subject to judicial notice. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011). Under this exception, courts may consider "relevant facts obtained from the public record," so long as these facts are construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint. *B.H. Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 556-558 (4th Cir. 2013).

Additionally, the Court in ruling on the motion to dismiss can consider documents attached to Boyles's Motion to Dismiss that were not attached to or expressly incorporated in the Complaint, so long as the documents are integral to the Complaint and there is no dispute about the document's authenticity. See *Secretary of State for Defense v. Trimble Navigation, Ltd.*, 484 F.3d 700 at 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Phillips v. LCI Int'l*, 190 F.3d 609, 618 (4th Cir. 1999); see *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a document is "integral to the Complaint where the Complaint relies heavily on its terms and effect").

Exhibits attached to Brackney's Complaint are subject to the "exhibit-prevails rule," – see *Fayetteville In'vrs v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991); *Walk at Broadlands Homeowner's Ass'n v. Open Band at Broadlands, LLC*, 713 F. 3d 175, 182 (4th Cir. 2013)) under which if a Plaintiff "attaches documents and relies upon the documents to form the basis for a claim or a part of a claim, dismissal is appropriate if the document negates the claim." See *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *Goines v. Valley Community Services Bd.*, 882 F.3d 259, 166 (4th Cir. 2016). Finally, where as here the Plaintiff attaches or incorporates a document upon which her claim is based or when the Complaint otherwise shows that the Plaintiff has adopted the contents of the document (as in this case where Brackney bases her asserted Virginia state law defamation claim against Boyles on statements allegedly made by him in a September 3, 2021 Press Release,  Boyles's September 17, 2021 *The Daily Progress* Op-Ed and statements Boyles made as City Manager at the September 20, 2021 City Council Meeting, the Press Releases, Op-Ed, and statements made at a City Council meeting alleged are integral to the Complaint (Doc. 1 ¶ 217 (A., B., D. & E.)). Crediting statements actually in the 9/3/2021 Press

Release, 9/17/2021 Op-Ed and actually made by him at the September 20, 2021 City Council Meeting over conflicting allegations in the Complaint is proper. See *Am. Chiropractic*, 367 F.3d at 233-35.

The Court may consider Boyles's six exhibits attached to this brief and incorporated into his Motion to Dismiss without converting it to a Motion for Summary Judgment[1]. In this case, Boyles submits that along with his other exhibits and Brackney's Complaint exhibits, the public record video recording of the September 20, 2021 City Council Meeting (Boyles Exhibit 6 to his Motion to Dismiss) showing what Boyles actually said at the September 20, 2021 City Council Virtual Meeting is a fact obtained from public record and all may properly be considered by this Court in ruling on Boyles's Motion to Dismiss.

Boyles attaches as Exhibits to this Brief and incorporates into his Motion to Dismiss the following six Exhibits integral to the Complaint which represent what Boyles actually stated in a September 3, 2021 Press Release by the City (Boyles Exhibit 4), in the September 17, 2021 actual *Daily Progress* Op-Ed (Boyles Exhibit 5), and at the September 20, 2021 public City Council Meeting (Boyles Exhibit 6), which Brackney alleges in her Complaint as a basis for her Defamation claim:

### -**BOYLES  EXHIBIT 1**

 *6/18/2018* – City of Charlottesville *at will* (Doc. 1 ¶ 139 Exhibit F) Employment Agreement with Dr. Rashall Brackney signed by her and by then-City Manager Maurice Jones, attached as Exhibit F (Doc. 1-6, Doc. 1 ¶¶ 28, 134) to Plaintiff's Complaint, thereby part of the Complaint pursuant to Rule 10(c) F.R.C.P. and incorporated by reference into her Complaint as the basis of her Fourth Cause of Action.

---

[1] Boyles expressly states he does not intend for his Motion to Dismiss to be construed as a Motion for Summary Judgment.

- **BOYLES EXHIBIT 2**

9/1/2021 – Brackney Termination Without Cause hand-delivered letter at 2:30 p.m. on 9/1/2021 signed by Charles Boyles as City Manager. Exhibit 2 is integral to Brackney's notice of termination she alleges at ¶ 134 in the Complaint as reflected in a page of Exhibit S she attaches as Exhibit S to her Complaint (See Doc. 1-19, pg. 4 of 7, pg. ID #323).

-**BOYLES EXHIBIT 3**

9/1/2021 – City of Charlottesville actual Press Release announcing City Manager Chip Boyles's termination of Police Chief Rashall Brackney's employment contract upon 90 days' notice and placement on administrative leave for the next 90 days until November 30, 2021 incorporated by reference, integral to and alleged in ¶ 72 of her Complaint as a statement allegedly by Boyles.

-**BOYLES EXHIBIT 4**

9/3/2021 – City of Charlottesville actual Press Release that date alleged in the Complaint at ¶¶ 72, 76, 77, 217 (A. & B.) which it appears Brackney alleges is attached as Exhibit A  (Doc. 1-1) to her Complaint (thereby making the actual press release integral to, adopted by and incorporated by reference into the Complaint, since the alleged statements therein by Boyles form the basis of a portion of Brackney's Eighth Cause of Action Defamation claim).

- **BOYLES EXHIBIT 5**

9/17/2021 – Chip Boyles's actual *The Daily Progress* Op-Ed "Opinion/Commentary: Boyles comments on Brackney: A tough and unpopular decision" that date alleged as the basis of Plaintiff's

Eighth Cause of Action Defamation claim thereby incorporated by reference and integral to the Complaint. ¶ 217(D).

### -<u>BOYLES  EXHIBIT 6</u>

9/20/2021 – Video recording of Charlottesville City Council Virtual Meeting on 9/20/2021 of Boyles's actual statements that date as City Manager that date including those during the Community Matters City Manager's Response to Community Matters and to Councilors (See § 2-149 of the Charlottesville City Code (1990)) portion of the meeting and response (beginning at 52:01 and ending at 1:13:08 of Boyles Exhibit 6) thereto. See also attached the public record City Council Agenda as part of Boyles Exhibit 6 for the meeting. The City of Charlottesville public record Exhibit 6 video recording of the meeting can be accessed at the following link:

https://boxcast.tv/channel/vabajtzezuyv3iclkx1a?b=qzqb51dabuckq5uwynwh

The meeting public record is integral to the Complaint as to the "particular words" Boyles actually stated during the 9/20/2021 council meeting (Doc. 1 ¶¶ 80, 217(E)), which Brackney alleges are defamatory at ¶ 217(E).

### <u>ARGUMENT</u>

### <u>BRACKNEY'S FOURTH CAUSE OF ACTION FAILS TO ALLEGE A PLAUSIBLE CLAIM OF TORTIOUS INTERFERENCE WITH HER *AT WILL* EMPLOYMENT CONTRACT AGAINST CITY MANAGER CHARLES "CHIP" BOYLES</u>

When Boyles as City Manager exercising his sole authority pursuant to the City Charter terminated Police Chief Brackney he was not a "third party" with respect to Brackney's admitted *at will* Employment Agreement with the City of Charlottesville. Individually he was incapable of terminating her *at will* employment contract with the City.  Under the Charlottesville City Charter and applicable Code section, he alone as City Manager had the power to act for the City of

Charlottesville. Secondly, Brackney fails to allege  improper methods by Boyles, which is required under settled Virginia law to plead a plausible claim of tortious interference by a third party with her admittedly *at will* contract of employment against him.

As the basis of Brackney's attempted Fourth Cause of Action relating to termination of her *at will* employment agreement, she alleges as follows:

Brackney was employed as Chief of Police by the City of Charlottesville as an *at will* employee (Doc. 1 ¶ 139 & Doc. 1-6, Ex. F ¶ (C), p. 5) pursuant to an Employment Agreement she signed June 18, 2018, which was signed by then-City Manager Maurice Jones on June 26, 2018 (Doc. 1 ¶ 134 &  Doc. 1-6, Ex. F & Boyles Ex. 1 attached hereto). She admits in her Complaint that under the express terms of her Employment Agreement during her Initial Term that either the City Manager or she as the employee had the unconditional right to terminate the Employment Agreement, without cause, after giving 90 days' advance notice to the other. She admits that she was notified and given the 90 days' "without cause" advance notice under her contract of her termination as Police Chief on September 1, 2021 by City Manager Charles Boyles (Doc. 1 ¶ 68) and that a City Press Release announcing the termination was issued that date (see Boyles Ex. 3 attached hereto). She also attaches to her Complaint as Exhibit S (Doc. 1-19, p. 4) handwritten notes dated September 1, 2021 2:30 p.m. confirming her notification by City Manager Charles Boyles, her meeting with him and  City Manager Boyles signed termination letter. The September 1, 2021 hand-delivered letter termination notice from City Manager Boyles alleged at ¶ 137 of her Complaint is attached hereto as Boyles Exhibit 2 to this Brief. Boyles's Exhibit 2 September 1, 2021 termination notice letter is integral to the allegations (¶¶ 28, 68, 137, 139) in her Complaint and attempted Fourth Cause of Action.  As alleged in the Complaint at ¶¶ 68 & 137, Boyles in his capacity as City Manager notified Chief Brackney in his September 1, 2021 termination notice letter (Boyles Ex. 2) that "per the City of Charlottesville

Employment Agreement entered into with you on June 18, 2018, I am providing you 90 days' written notice of termination without cause of this Agreement." Boyles then went on to notify her that, (pursuant to his authority under the City Charter as City Manager in exercise of his administrative authority and right to discharge all employees under his control and § 20-3 (a) Charlottesville City Code), during the 90 days' notice period, she was on administrative leave with pay and relieved from performing the duties of chief of police during the notice period. Brackney alleges in her Complaint that at "all times relevant to the occurrences complained of herein," Boyles was City Manager and acted as an employee and an agent of the City of Charlottesville- the only other party to her *at will* Employment Agreement. (Doc. 1 ¶¶ 3, 132).

Brackney attempts to allege in her Fourth Cause of Action solely as a conclusion of law a claim that Boyles as City Manager was somehow not acting within the course or scope of his employment. (Doc. 1 ¶ 133). However, a complaint which "tenders naked assertions devoid of further factual enhancement" is insufficient. *Iqbal* 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 55). Her Complaint contains no factual allegations supporting her bald allegation that he was acting anything other than in the scope of his employment with respect to the termination without cause of her *at will* Employment Agreement. Charlottesville City Manager Boyles's action on September 1, 2021 was necessarily pursuant to the express authority granted to him under Section 5.01 of the public record Charlottesville City Charter and Charlottesville City Code related to the City Manager's duties.

The actual factual allegations in her Complaint against Boyles relating to her claim of an alleged tortious interference with her admittedly *at will* employment are contained in ¶ 140 & ¶ 141 of her Complaint. She alleges that on June 13, 2021 City Manager Boyles was contacted by two City Councilors about an "all hands meeting on June 14, 2021." (Doc. 1 ¶ 140(A)), met with former Assistant Police Chief of Charlottesville James Mooney on August 18, 2021 to discuss a PBA survey

of anonymous former and current employees (Doc. 1 ¶ 140(B)) and then on August 10 & 23, 2021 met with Michael Wells, PBA Central Virginia President of Charlottesville (Doc. 1 ¶ 11) to discuss the PBA survey. She alleges that Boyles provided Wells with a copy of the publicly available Employment Agreement and listened to a recording by and discussed Wells's alleged opinion that "new leadership is needed." (Doc. 1 ¶ 140(C)). Brackney admits that after listening to the recording, City Manager Boyles noted simply "Nothing new." (Doc. 1 ¶ 140(C)). The remainder of the allegations in ¶ 140 (D-Q) pertain to alleged actions by Boyles after he had given notice to Brackney of her termination and placed her on paid administrative leave during which notice period she was relieved from performing the duties of police chief. In ¶ 141, Brackney alleges that on September 3, 2021 subsequent to Brackney being notified of her termination that Boyles stated he was not going to change an alleged earlier description she quibbles with of a letter shared with the public as "her letter." She alleges in fact that it was not just her letter, but rather an edited collaboration between **herself**, the City Attorney, Assistant Chief of Police Mooney, and then City Manager Boyles. She goes on to claim that she was subjected to disparate treatment by being placed on administrative leave with pay and relieved from her duties as police chief during the notice period whereas four other employees (none of whom were the police chief) had any of the limitations or restrictions alleged in ¶ 140 imposed upon them.  Brackney alleges that on October 12, 2021, City Manager Boyles submitted his resignation and stated that he stood by his decision as City Manager to terminate her. (Doc. 1 ¶ 141(A) & (B)). She concludes by alleging that Boyles as City Manager falsely stated that he had conducted six interviews of officers and/or staff regarding their opinions of Chief Brackney and her leadership upon which he based his decision to terminate her. (Doc. 1¶ 141(C)).

In Virginia, the elements required to state a claim of tortious interference with a contract that is not terminable *at will* are: 1. The existence of a valid contractual relationship or business

expectancy; 2. Knowledge of the relationship or expectancy on the part of the interferor; 3. Intentional interference by a third party inducing or causing a breach or termination of the relationship or expectancy; and 4. Damage as the result to the party whose relationship or expectancy has been disrupted. *Duggin v. Adams*, 234 Va. 221, 226 (1987) (citing *Chaves v. Johnson*, 230 Va. 112, 120 (1985)). Unlike a party to a contract for a definite term under settled Virginia law, Brackney's interest in a contract admittedly terminable *at will* was essentially only an expectancy of future economic gain and she had no legal assurance that she would realize the expected gain. See Restatement (Second) of Torts § 766, g (1979). *Duggin* at 226.

Under settled law in Virginia a person cannot intentionally interfere with his own contract. *Francis Hospitality, Inc. v. Read Properties, LLC*, 296 Va. 358, 363 (2018). In *Francis Hospitality, Inc.*, the Virginia Supreme Court reaffirmed that with respect to a cause of action for tortious interference only a person **outside** the contracted relationship with the plaintiff is subject to liability as an interferor. *Francis Hospitality, Inc.* at 363 (citing the original case recognizing the cause of action in Virginia *Chaves v. Johnson*, 230 Va. 112 (1985) and quoting Restatement (Second) of Torts § 766, g (1979)). The Virginia Supreme Court then went on to note in *Francis Hospitality, Inc.* that in *Fox v. Deese*, 234 Va. 412, 427, it had earlier unequivocally stated that "a person cannot intentionally interfere with his own contract." *Fox* involved multiple claims by Fox, a promoter against Deese, the Richmond City Manager. The Court held that unless the City Manager was acting outside the scope of his employment with the City – the City's contract (as in this case) was also " his contract" and he could not as a matter of law interfere with it. *Fox* at 427, *Francis Hospitality, Inc.* at 363. (See also Fn. 4 at *Francis Hospitality, Inc.* collecting cases from other jurisdictions holding with respect to Brackney's attempted tortious interference claim that

the cause of action does not apply to actions between parties to an existing contact – it **only** lies against outsiders).

However, in *Duggin v. Adams*, the Virginia Supreme Court also stated that a prima facie approach of basing liability on a mere showing that a third party's intentional interference with a contract terminable *at will* caused damages requires too little of the Plaintiff. Accordingly, under settled law in Virginia now, when a contract is terminable *at will* such as in this case, Brackney, in order to present a plausible claim of tortious interference, must **also allege** not only intentional interference by a third party (not a party to the contract) that caused the termination of the *at will* contract, but also must plead that the defendant employed "improper methods." *Duggin* at 226-227. Methods of interference that are considered improper noted in *Duggin* are those means that are illegal and independent violations of statute, regulations, or recognized common-law rules. In *Miller v. SEVAMP, Inc.*, 234 Va. 462, 465 (1987), the Virginia Supreme Court reiterated that "the at-will doctrine constitutes a cornerstone of the Commonwealth's employment law." The Court noted that "At will employment offers maximum flexibility to an employer and an employee. An employee remains at liberty to leave his employment for any reason or no reason at all…By the same token, the employer is free to terminate the employment relationship without the need to attribute a reason." While Brackney's *at will* employment agreement included a 90-day notice provision for a termination without cause (Boyles Exhibit 1 and Doc. 1-6, at § 2 (B)(2)), she had no contractual right to continue her job functions during the 90 days' notice period. She was only entitled to be paid through the notice period. She remained subject to the orders and regulations of the city manager. (see § 20-3 (a) Charlottesville City Code).

Brackney's factual allegations in support of her attempted Fourth Cause of Action for tortious interference with her employment contract fail to state a plausible claim against then City Manager Boyles for two reasons:

First, while Brackney alleges in conclusory fashion that all of Boyles's actions with respect to the termination of Brackney's *at will* Employment Agreement were outside the scope of his employment, all of the factual allegations in the Complaint as to Boyles are in his capacity as City Manager. There are no allegations of individual conduct or action by him outside of his duties as the City Manager under the City Charter and Code. Brackney's conclusion of law allegations are not binding on the Court on its review of this Motion to Dismiss. *Iqbal* at 678-79; *Twombly*, 550 U.S. at 557. Under Virginia law, a party to an *at will* employment contract has a right to terminate the contract without cause as reflected in Brackney's Employment Agreement. The City of Charlottesville pursuant to its Charter under § 5(b) has a city manager form of government. Boyles under the City Charter simply had no power as an individual to terminate Brackney's Employment Agreement with the City of Charlottesville. Pursuant to § 5.01 of the City Charter, only Boyles acting as the City Manager had the executive and administrative authority and the right to employ and, as in this case, discharge employees under his control, including Police Chief Brackney. Moreover, pursuant to § 5.01 of the City Charter, the Charlottesville Police Department is expressly under the general supervision of the City Manager. Pursuant to § 2-146 Charlottesville City Code (1990), Boyles as the City Manager was the chief executive and administrative officer of the City responsible for enforcement of the laws of the City and was the director of public safety with general supervision over the…police department of the City. Further, pursuant to § 2-149(a) Charlottesville City Code (1990), Boyles as the City Manager had the sole power to dismiss, suspend, and discipline employees such as the police chief, including the power to place employees

such as Brackney on administrative leave with pay and relieve the employee of their duties during that time period. Pursuant to § 20-3 (a) of the Charlottesville City Code, the chief of police "shall always be subject to the orders and regulations of the city manager and the council." City Manager Charles Boyles acted for the City and was the City, for purposes of the attempted Fourth Cause of Action, when he acted as the party to the Employment Agreement. He was not a third party and therefore was incapable of tortiously interfering with Brackney's *at will* employment contract.

Secondly, Brackney fails to allege a tortious interference with Brackney's *at will* Employment Agreement since she fails to plead improper methods also required by *Duggins* in order to plead a plausible tortious interference with an *at will* contract by a third party.

Moreover, Boyles is immune pursuant to § 8.01-223.2 *Va. Code Ann.* (1950) from Brackney's alleged claim of tortious interference with her *at will* employment contract to the extent that it is based on statements as to him alleged in ¶¶ 65, 67, 72, 73, 76, 77, 78, 79, 80, 140, 141, 142 regarding matters of public concern protected under the First Amendment.

WHEREFORE, Boyles moves the Court to grant his Motion to Dismiss Brackney's Fourth Cause of Action against him.

**BRACKNEY'S EIGHTH CAUSE OF ACTION FAILS TO STATE A PLAUSIBLE CLAIM OF DEFAMATION BY BOYLES SINCE HE IS IMMUNE UNDER § 8.01-223.2 *VA. CODE* (1950) FOR DEFAMATION CLAIMS BASED ON THE QUOTED STATEMENTS BOYLES ALLEGEDLY MADE RELATING TO A MATTER OF PUBLIC CONCERN ON THREE OCCASIONS OR BEFORE THE GOVERNING BODY AND BECAUSE SOME OF THE CLAIMED ACTIONABLE STATEMENTS WERE NOT EVEN MADE AS ALLEGED AND, THEREFORE, WERE NOT DEFAMATORY AND ALL WERE, IN CONTEXT, NOT ACTIONABLE OPINIONS PROTECTED UNDER THE FIRST AMENDMENT**

In support of her defamation claim, Brackney alleges in her Complaint at ¶ 216 (Doc. 1) that "on or about September 2021, Defendant Boyles authored and published several press releases and made several comments regarding the termination of Plaintiff." Brackney attempts to allege a

defamation claim under her Eighth Cause of Action as to Boyles based on "particular statements" by Boyles, which she claims were "false, libelous, and slanderous" on three dates, to-wit: September 3, 2021 in a Press Release she quotes from, which she claims is attached as Exhibit A (Doc. 1-1) to her Complaint (Doc. 1 ¶ 217 (A) & (B)); a September 17, 2021 Op-Ed by Boyles in *The Daily Progress* she quotes from and claims to attach as Exhibit D (Doc. 1-4) to her Complaint (Doc. 1 ¶ 217 (D)); and a public statement she alleges in quotes that she claims City Manager Boyles made at the Charlottesville City Council Virtual Meeting on September 20, 2021, about which she attaches an Exhibit C to her Complaint (Doc.1-3).

As a threshold matter, Brackney fails to state a plausible defamation claim against former City Manager Boyles for any of the quoted statements Boyles allegedly made in a press release on September 3, 2021, in a September 17, 2021 Op-Ed written by him and published in *The Daily Progress*, and a statement she claims he made at the September 20, 2021 Charlottesville City Council meeting because,  pursuant to § 8.01-223.2 *Va. Code Ann.* (1950), Boyles is entitled to immunity from civil liability for defamation claims based upon statements regarding matters of obvious public concern, which are protected by the First Amendment (September 3, 2021 & September 17, 2021) and those allegedly made by Boyles at the public Charlottesville City Council meeting on September 20, 2021. Section 8.01-223.2 *Va. Code Ann.* (1950) provides in pertinent part that a person shall be immune from civil liability for a violation of "… a claim of defamation based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the United States Constitution…or (ii) made at a public hearing before the governing body of any locality…concerning matters properly before such body." The only exception to such immunity under the statute is for statements "made with actual or constructive knowledge that they are false or with

reckless disregard for whether they are false." In Brackney's Complaint, she generally alleges as a conclusion of law, unsupported by any factual allegations, as to Boyles, in ¶ 219 that

> "Defendants either knew the articles, or language, in the press releases were false, or believing them to be true lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publications were based and **therefore** Defendants are **negligent** in the authorship and publications of the articles and press releases, the content of which Defendants authorized and ratified." (emphasis supplied).

This conclusory allegation of the possibility that he "knew" (¶ 219 of the Complaint (Doc. 1)) aside from not being an allegation of actual or constructive knowledge of falsity is a "mere recitation of the legal standard" required for entitlement to an exception above and does not constitute a plausible allegation of entitlement to the exception since it is unsupported by any factual allegations. See *Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 F.3d Appx. 234 (4th Cir. 2020); *Mayfield v. Nat'l Ass'n Stockcar Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012); *Iqbal* at 679; *Wahi* at 615. Moreover, the conclusory allegation of mere negligent authorship and publication is an insufficient allegation (even as a conclusion of law) in order to plead entitlement to the limited exception in § 8.01-223.2 *Va. Code Ann.* (1950). The exception to immunity specifically requires either actual knowledge or constructive knowledge that the statements were false or with reckless disregard for whether they were false, i.e. not nearly negligent as pled by Brackney, albeit without any supporting factual allegations.

To state a claim for defamation under Virginia law, Brackney must allege: (1) publication of (2) an actual statement with (3) the requisite intent. *Schaecher v. Bouffault*, 290 Va. 83, 91 (2015), *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 499 (W.D. Va. 2019). Brackney fails to do so. In Virginia, a statement is defamatory *per se* if it imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of duties or prejudices the party in his or her profession or trade. *Yeagle*

*v. Collegiate Times*, 255 Va. 293, 297 (1998). Judge Urbanksi noted in his lengthy opinion in *Edwards* that the second element of a defamation claim under Virginia law requires an "actionable statement." *Chapin v. Knight-Ridder, Inc.*, 993 F. 2d 1087, 1092 (4ᵗʰ Cir. 1993). As Judge Urbanski noted "to be actionable," a statement must not only be false, but also defamatory, that is, it must "tend so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id*. (citing Restatement Second of Torts § 559). "Merely offensive or unpleasant statements" are not defamatory; rather, defamatory statements are "those that make the plaintiff appear odious; infamous; or ridiculous." *Id*.; see also Robert D. Sack's *Defamation: Libel, Slander, and Related Problems* § 2.4.1 (1980) ("there is common agreement that a communication that is merely unflattering, annoying, irksome, or embarrassing, or that hurts the plaintiff's feelings, without more is not actionable."). In order for a statement to be potentially false, it must also be factual. See *Tharpe* 885 Va. at 476, 377. Therefore, "statements of opinions are generally not actionable because such statements cannot be objectively characterized as true or false." *Jordan v. Kollman*, 269 Va. 569, 575-76 (2005). Under Virginia law he notes, "speech which does not contain a provably false factual connotation, or statements that cannot reasonably be interpreted as stating actual facts about the person, cannot form the basis of a common law defamation action." *Yeagle*, 255 Va. at 493 (1998). Judge Urbanski noted in *Edwards* that in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), the U.S. Supreme Court described two categories of speech protected by the First Amendment. The first involves statements that are not "provable as false" meaning the language cannot be proved true or false by a "core of objective evidence "or by reference to an "objectively verifiable event." In other words, a statement is not actionable unless it asserts a demonstrably false fact "subject to objective verification." *Biospherics, Inc. v. Forbes, Inc.*, 151 F. 3d 180, 184 (4ᵗʰ Cir. 1998). As applicable to the factual allegations by Brackney in this case, the Court noted in *Edwards*

at 505 that "this category also involves statements of **subjective belief** based on disclosed facts, as when the basis for the conclusion is fully disclosed, no reasonable reader would consider the (statement) as anything but the opinion of the author drawn from the circumstances related." (emphasis added). Citing *Chapin* 993 F.2d at 1093. The third element of a defamation claim in Virginia outlined by Judge Urbanski in *Edwards* is intent. The requisite level of intent associated with a defamation action varies depending upon the plaintiff's status as a "public figure" or not. Individuals with the status of public figure are subject to a heightened "actual malice intent standard." *Edwards* at 505. The reasons for the heightened actual malice standard with regard to public figures is because of: (1) their "ability to resort to the self-help remedy of rebuttal" by virtue of the fact that "they usually enjoy significantly greater access to the media" than private individuals, which enable them to counter criticism and expose the falsehood and fallacy of defamatory statements"; and (2) because they have "voluntarily exposed themselves to increased risk of injury from defamatory falsehood and hence are less deserving of protection." *Foretich v. Capital City/ABC, Inc.*, 37 F.3d 1541, 1552 (4th Cir. 1994). The actual malice standard Judge Urbanski stated in *Edwards* reflects our "profound national commitment to the principle that the debate on public issues should be uninhibited, robust, and wide open and that it may well include vehement, accosting, and sometimes unpleasantly sharp attacks on public figures." *Edwards* at 505. The question of whether Plaintiff is a public figure is an issue of law and in this case, based on Brackney's pleadings, she has assumed (correctly) that as Chief of Police she was a public figure in this case. A police chief is a public figure. *Henry v. Collins*, 380 U.S. 356 (1965). Brackney fails to allege facts necessary to support a plausible claim of actual malice because of her status as a public figure. *Fairfax v. CBS Corp.*, 2 F. 4th 286, 293-5 (4th Cir. 2021).

As applicable to the factual allegations in Brackney's Complaint with respect to Boyles's allegedly defamatory statements, the Court in *Edwards* noted that "The Fourth Circuit makes clear that to appropriately construe a statement in light of what might reasonably have been understood therefrom, it is also incumbent upon courts to look not just at the allegedly defamatory words themselves, but also at the context and general tenor of its message." *Edwards* at 508. The Court is obliged to assess how an objective, reasonable reader would understand a challenged statement... even if a statement is objectively verifiable under the Fourth Circuit four-factor test set out in *Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984). Even if the statement is objectively verifiable, it "nevertheless qualifies as an opinion" if it is clear from of the three remaining factors, individually or in conjunction, that a reasonable reader or listener would recognize its weakly substantiated or subjective character and discount it accordingly. Under the fourth *Ollman* factor noted by *Edwards*, the Court should consider the broader context in which the statements alleged to be defamatory were made. Virginia law mandates an examination of context. *Hyland v. Raytheon Tech, Servs Co.*, 277 Va. 40 (2009). In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement... Rather, a court must consider the statement as a whole. *Schaecher*, 290 Va. at 101 (holding that "as with all evaluation of defamatory statements, however, context is of the utmost importance"); See also *Yeagle* 255 Va. at 297-98 (upholding dismissal of a claim after "considering the phrase at issue in the context of the entire article."). In the Fourth Circuit, even when a statement is subject to verification, it may still be protected  if it can be understood from its language and context to represent the personal view of the author or speaker who made it. *Potomac Valve Fitting, Inc. v. Crawford Fitting Co.*, 829 F. 2d 1280, 1288 (4th Cir. 1980).

Under Virginia law, the trial court decides as a threshold matter of law whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to the finder of fact. In essence, the court performs a gatekeeping function and analyzes the actual factual allegations with respect to the statements pled by the Plaintiff in context. *Perk v. Vector Res. Group, Ltd.*, 253 Va. 310, 316-17 (1997). Whether an alleged defamatory statement contains a provably false factual connotation or is "a pure expression of opinion" is a question of law. *Schaecher* at 103. In Virginia, where the context of the statements and positions of the speaker are such that the speaker's statement was purely his own subjective analysis, the statement is protected by the First Amendment and is not actionable. *Schaecher* at 106.

Based on application of the above principles and law guiding the court's gatekeeper function in assessing as a matter of law whether City Manager Boyles's claimed "words" were defamatory, the September 3, 2021 Press Release (Doc. 1 ¶ 217), September 17, 2021 Boyles's *Daily Progress* Op-Ed, and claimed statements during the September 20, 2021 Charlottesville City Council virtual meeting, each fail to allege a plausible claim under Virginia law for defamation.

 In support of his Motion to Dismiss, Boyles submits the following arguments and authorities with respect to each of the three claimed defamatory statements:

### 1.  September 3, 2021 Press Release Statements

In ¶ 217 (A) & (B) (Doc. 1), Brackney claims she was defamed by statements allegedly made by City Manager Boyles in a September 3, 2021 City Press Release she cites to as Exhibit A attached to her Complaint in ¶ 217 (A) (Doc. 1-1).  In ¶ 217 (A) & (B), her allegations contain quotations apparently underlining in the Press Release portions of the quoted language she claims are defamatory by Boyles. In *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127 (2003), the Virginia Supreme

Court reaffirmed its holding years earlier in *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200 (1939) that a pleading alleging defamation in Virginia "requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading must go further – that is, it must purport to give the exact words." *Fuste* at 862. Brackney attempts to do just that in ¶ 217 of her Complaint.

The actual September 3, 2021 City Press Release (Boyles Exhibit 4) in its entirety, which Brackney made integral to her Complaint and adopted by alleging it in her Complaint, provides the necessary context. The Press Release in its entirety is necessary in order for the Court to be able to properly exercise its gatekeeper function in determining as a matter of law whether the statements relied on by Brackney in ¶ 217 (A) were even defamatory and had the requisite "sting" or were not actionable as opinions protected by the First Amendment. Exhibit A (Doc. 1-1) attached to Brackney's Complaint is obviously not a copy of the September 3, 2021 City Press Release. On its face, it is a news article appearing in *Charlottesville Tomorrow* on Friday, September 3, 2021. The newspaper article about the City Press Release quotes some but not all statements from City Manager Boyles made "in a statement published as the City's website at four p.m. Friday" according to Exhibit A (Doc. 1-1). The newspaper article also includes material not in the actual Press Release and also quotes statements attributed to others. Viewed in the context of the entire September 3, 2021 Press Release (Boyles's Exhibit 4 attached hereto), the underlined quoted statements made by Boyles relied on by Brackney, which appear in ¶ 217 (A) evaluated in conjunction with the preceding prefatory paragraph from the actual September 3, 2021 Press Release, to-wit: "I want the community to understand that I fully supported the difficult personnel decisions recently made by Chief Brackney," and "I also supported the publication of her letter on August 20 that shared background information with the community on these departmental and staffing changes. Promoting transparency and

fostering trust are also important values to me as City Manager," are not defamatory. The additional quotes in context show that the quoted statements from the news article relied on by Brackney in the Complaint in Exhibit A (Doc. 1-1) are not defamatory (i.e. the quoted and underlined portion of the September 3, 2021 Press Release in ¶ 217 (A) clearly reflects that the words relied on by Brackney represented Boyles's non-actionable opinion and viewpoint on a matter of public concern). Moreover, Boyles's use of the words "I ultimately decided" before the last underlined portion in Brackney's ¶ 217 (A) confirm that the quoted language from Boyles reflected his subjective analysis, viewpoint and opinion. Finally, the claim in ¶ 217 (B) of the September 3, 2021 Press Release that **Boyles stated** in the Press Release that Brackney was "not a good fit" and thereby somehow insinuated that her termination was "for cause" fails to allege a plausible defamation claim since on its face, the "exact words" alleged by Brackney that Boyles **stated**, i.e. that she "not a good fit," do not even appear in Brackney's Exhibit A to the Complaint (Doc. 1-1) or the actual September 3, 2021 City Press Release (Boyles's Exhibit 4).

### 2.  September 17, 2021 "Statements"

In ¶ 217 (D), Brackney claims that former City Manager Boyles defamed her in an Op-Ed he wrote published on September 17, 2021 in *The Daily Progress*. She quotes in ¶ 217 (D) (Doc. 1) some of the "words," which appear in the actual Op-Ed. She attaches as Exhibit D (Doc. 1-4) to her Complaint a *Daily Progress* Op-Ed she relies on in ¶ 217 (D), which does not include all the "words" in Op-Ed she stakes her defamation claim on in ¶ 217 (D). It's not an accurate copy of the Op-Ed. The actual September 17, 2021 Op-Ed, attached hereto as Boyles Exhibit 5, is integral to Brackney's allegations in  ¶ 217 (D) and provides the context for the Court to exercise its gate-keeper function as to this claim.

In ¶ 217 (D), Brackney omits Boyles's prefatory statements in his Op-Ed (Boyles Exhibit 5) explaining the rationale for his decision as City Manager to terminate the *at will* employment of Dr. Rashall Brackney as police chief. He explained that with respect to his decision, which was a matter of public concern that "[r]ecently, I made the **decision** to terminate the employment agreement of Dr. RaShall Brackney, Charlottesville's chief of police. **It was not easy**." (emphasis supplied). He went on to explain that "[w]hether at last week's City Council meeting or during one-on-one conversations with residents since the announcement, I did not expect to be confronted with such anger and vitriol. **Making unpopular decisions, however, comes with the job.** In my haste to solve a problem that I felt was growing out of control, I decided to act because I felt we were heading into another situation where Charlottesville Police Department would be gripped in chaos." (emphasis supplied). After stating as alleged by Brackney in ¶ 217 (D) that "…it is imperative to act," he explained why: "[s]o as your city manager, I took decisive action to prevent key leadership positions – which were in jeopardy of becoming vacant – from erupting into deeper divides within the department."

Viewed in context, Exhibit D also reflects additional words in the last two sentences of the last paragraph of the Op-Ed that are quite complimentary of Chief Brackney, to-wit: "While her tenure as chief of police may not have ended as many of us had hoped, I trust Chief Brackney will continue to do great things in law enforcement. The same is true for outcomes I hope we can continue to work towards, together in Charlottesville." This portion from Brackney's Exhibit D (Doc. 1-4 and Boyles Exhibit 5) when considered with the only selectively-quoted language from the Op-Ed clearly reflects that the Op-Ed was a summation of his evaluation, viewpoint, and opinion – all protected by the First Amendment.

The words actually written by Boyles in the September 17, 2021 Op-Ed evaluated in the context of his entire opinion piece are not defamatory and not actionable since they obviously reflect

City Manager Boyles's subjective analysis, viewpoint and opinion following his evaluation as City Manager performing his job under the City Charter, supervising the Police Department and the person under the City Charter and Code charged with any decision of whether to terminate the Police Chief. Boyles's September 17, 2021 *The Daily Progress* Op-Ed evaluated in context reflects his subjective analysis and is protected by the First Amendment. *Schaecher* at 106.

### 3.   September 20, 2021 "Statement" at Charlottesville City Council Meeting

In ¶ 217 (E), Brackney claims that former City Manager Boyles also defamed her during the virtual Charlottesville City Council meeting on September 20, 2021 when he allegedly **stated** "I in no way intend to malign her character, professional acumen, or ability to perform. I am simply indicating 'fit' is more than size and measurements, but feel and function." (Doc. 1).  In ¶ 217 (E), Brackney alleges those particular words as the "exact words" and basis of her defamation by slander allegation in that paragraph as required by Virginia Supreme Court in *Fuste*- "the exact words spoken or written must be set out." The "exact words" Brackney claims were actually spoken by Boyles on September 20, 2021 at the Charlottesville City Council meeting are obviously integral to the attempted defamation by slander claim alleged in ¶ 217 (E) of her Complaint. However, the ¶ 217 (E) allegation of the "exact words" Brackney claims Boyles uttered on September 20, 2021 fails to state a plausible defamation claim for the simple reason that the public record (Boyles Exhibit 6) of the obviously integral actual statements made by former City Manager Boyles reflects that Boyles **did not even state the words alleged in ¶ 217 (E)** at the meeting. Ironically, Brackney  alleges in support of her allegations of fact of the particular words spoken on 9/20/2021 an Exhibit C to her Complaint. A review of Exhibit C relied on by Brackney reveals that the statements she alleges as the sole support of her allegation in ¶ 217 (E) pertains  to a  highlighted portion of a **draft** of a statement Boyles

planned to make and read as a preface to his answers to Charlottesville City Council and a citizen questions submitted the week before that Boyles actually decided **NOT to include in his remarks**. See Exhibit C (Doc. 1-3, pp. 92 & 95). Attached as Boyles's Exhibit 6 to his Brief in Support of his Motion to Dismiss and incorporated therein, subject to the Court's ruling on Boyles's Motion for Leave to file a flash drive, is the public record recording of what City Manager Boyles actually said during the September 20, 2021 virtual Charlottesville City Council meeting, including his statements during the "City Manager Response to Community Matters and to Councilor Community Matters" portion of the meeting (see § 2-149 of the Charlottesville City Code (1990)) before the governing body concerning a matter properly before them. Attached as part of Boyles Exhibit 6 is the City Council Agenda for September 20, 2021.

Aside from the fact that the words alleged by Brackney as the basis of her ¶ 217 (E) defamation claim were not actually spoken by Boyles at the meeting, when properly evaluated by the Court in its gatekeeper function and viewed in the context of the words actually spoken by Boyles in the statement he made, his statements are not actionable but rather opinion protected by the First Amendment. Boyles's comments in context reflect that Boyles's alleged statement was his subjective analysis, opinion and viewpoint.

Wherefore, since he is immune and because his actual alleged particular words are not defamatory and in context are opinions on a matter of public concern protected under the First Amendment, Boyles respectfully requests that the Court dismiss the Eighth Cause of Action and award him reasonable attorneys' fees and costs under § 8.01-223.2 *Va. Code Ann.* (1950) to the extent applicable.

**BRACKNEY'S NINTH CAUSE OF ACTION FAILS TO ALLEGE A PLAUSIBLE CLAIM FOR RELIEF OF A  VIRGINIA STATUTORY BUSINESS CONSPIRACY AGAINST BOYLES BECAUSE THE STATUTE DOES NOT APPLY TO CLAIMS FOR INJURIES TO THE EMPLOYMENT INTERESTS BRACKNEY PLEADS,  BECAUSE IT IS BARRED BY THE DOCTRINE OF INTRACORPORATE IMMUNITY AND FAILS TO ALLEGE A MEETING OF THE MINDS**

In Brackney's Ninth Cause of Action in support of her Virginia state law business conspiracy claim under § 18.2-499 *Va. Code Ann.* (1950) and presumably § 18.2-500 *Va. Code Ann.* (1950) she alleges in ¶ 238 that "Defendants conspired and agreed to mutually undertake or concert together for the purpose of willfully and maliciously injuring Plaintiff's reputation." (Doc. 1 ¶ 238).  Brackney alleges a series of actions that the co-conspirators allegedly undertook following her September 1, 2021 Notice of Termination, all of which she previously alleged in her Complaint as a consequence of City Manager Boyles placing her on paid administrative leave and relieving her of all duties as police chief during the 90-day notice period following her September 1, 2021 notice of termination. (Doc. 1 ¶ 274 (A)-(K)). She alleges in  ¶ 276 that Defendants made numerous public statements after her Notice of Termination, which she alleges harmed her "reputation"; she does not allege how. In ¶ 279, she alleges in conclusory fashion the elements of a § 18.2-499 *Va. Code Ann.* (1950) criminal conspiracy and potential civil conspiracy under § 18.2-500 *Va. Code Ann.* (1950). In ¶¶ 280 & 281, she concludes her Ninth Cause of Action by alleging the damages she claims were proximately caused by the business conspiracy. She alleges that she "suffered, and continues to suffer, substantial losses incurred in seeking subsequent and comparable employment, earnings, deferred compensation, earning capacity, back pay, front pay, and other employment benefits," (Doc. 1 ¶ 280) and that, as further proximate result, she has suffered and, continues to suffer, "physical, personal injuries, embarrassment, humiliation, mental anguish, and other general damages." (Doc. 1 ¶ 281). In her prayer for relief, she requests in ¶ 281 (A) special and economic damages, including those related to "lost employment, lost wages, lost back pay and front pay, lost future income, compensatory damages,

and lost employee benefits," as well as unspecified economic and noneconomic damages, including "…impairment in reputation and standing in the community, lost potential employment opportunities, diminished character, lost public and speaking engagement opportunities." (Doc. 1 ¶ 281 (B)). She further requests personal injury damages for "mental and emotional distress damages, mental anguish, personal humiliation, shame, and disgrace…" (Doc. 1 ¶ 281 (C)). Brackney alleges to further support her business conspiracy claim that each of the individual defendants was an employee of the City of Charlottesville (Doc. 1 ¶¶ 2-12, 236) and that the City of Charlottesville is liable for their actions on the basis of *respondeat superior*. Brackney alleges as to Boyles that at all relevant times he "was acting in his individual capacity as an employee and/or agent of Defendant City of Charlottesville." (Doc. 1 ¶¶ 3, 236). She goes on to allege in conclusory fashion unsupported by any factual allegations in her attempted Virginia state law Business Conspiracy claim that Boyles and five of the other individual defendants were somehow not acting within the scope of their employment, but, rather, were acting with "ulterior motives and without an honest belief that their actions would benefit their employer." (Doc. 1 ¶ 133). Boyles ability to "injure" Brackney and terminate her *at will* contract derived solely from his position as City Manager and authority under the City Charter and applicable ordinances. The test is not the claimed "wrongful" nature of the alleged conspirators' actions but whether the alleged wrongful incident was performed within the scope of the alleged conspirator's official duties, which Boyles claimed actions were. As the district court noted in *Doe v. Bd. Of Educ. Of Hononegah Cnty. High School Dist.,* No. 207, 833 F. Supp. 1366, 1381-83 (N.D. Ill. 1995) with respect to the test if the "measure of the applicability of the intracorporate conspiracy doctrine was keyed to the alleged wrongdoing of corporate affairs, it would quickly become a meaningless concept."

Moreover Brackney does not identify or allege any facts pertaining to what Boyles ulterior motive was. She alleges again in only conclusory fashion that the "Defendants" (presumably including all of the defendants, including Boyles) "conspired and agreed to mutually undertake or concert together for the purpose of willfully and maliciously injuring Plaintiff's reputation." (Doc. 1 ¶ 238).

The Complaint fails to state a plausible claim of an actionable Virginia state law civil business conspiracy under § 18.2-500 *Va. Code Ann.* (1950) for three reasons:

1. **Section 18.2-500 *Va. Code Ann.* (1950) does not apply to Brackney's damage claims and prayer for relief for injuries in her Complaint since the statute does not apply to damage to employment interests and reputation.**

Under settled Virginia law in *Andrews v. Ring*, 266 Va. 311, 318-20 (2003), the Virginia Supreme Court held that § 18.2-499 and § 18.2-500 *Va. Code Ann.* (1950) only apply to business and property interests and do not apply to personal or employment interests. The Court noted that § 18.2-499 *Va. Code Ann.* (1950) describes such a conspiracy as "willfully, and maliciously, injuring another in his reputation, trade, business, or profession" and that within the statute, the term "reputation" and its association with "trade, business, or profession" requires the exclusion of personal reputation and business interests in employment from the scope of the statute's coverage. *Andrews* at 319. In *Andrews,* the Virginia Supreme Court also pointed out that the Fourth Circuit had reached a similar holding in *Buschi v. Kirven*, 775 F. 2d 1240, 1259 (4th Cir. 1985). In *Andrews*, the Court held as a matter of law that § 18.2-499 *Va. Code Ann.* (1950) and § 18.2-500 *Va. Code Ann.* (1950) do not embrace claims for damages to injuries to personal reputation and employment interests (which Brackney attempts to plead in this case). See also *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 266 (W.D. Va. 2001) (finding that conspiracy claims of injury to personal reputation or

employment (as opposed to business) interests fail to state a claim under § 18.2-499 *Va. Code Ann.* (1950) and § 18.2-500 *Va. Code Ann.* (1950), including claims to damages for future employment opportunities). In *Bowers v. Rector & Visitors of the University of Virginia*, 2006 W.L. 3041269 at 10-11 (W.D. Va. October 24, 2006), the Court noted that § 18.2-500 *Va. Code Ann.* (1950) "is aimed at contact which injures a business" and should be "construed to exclude employment from its scope." citing *Buschi* at 1259. The Court went on to state that the holding in that case "followed the unanimous view of federal district courts sitting in Virginia and that the state statute was not meant to supply a remedy for damages to one's employment status or relationship." Similarly, in *Conyers v. Va. Hous. Dev. Auth.*, 2012 W.L. 4338649 (E.D. Va. September 20, 2012) the Eastern District court noted an unbroken line of federal district court cases and in Virginia holding that the right of action under § 18.2-499 *Va. Code Ann.* (1950) and § 18.2-500 *Va. Code Ann.* (1950) is afforded under those statutes only when malicious conduct is directed at one's *business*, not one's *person*, and that the statute focuses on conduct directed at property, i.e. one's business. It applies only to conspiracies resulting in business-related damages. Since Brackney's damage claims and prayer for relief relate only to her personal and employment interests rather than any business interest under settled law in Virginia, her Complaint fails to state a plausible claim of a business conspiracy under §§ 18.2-499 & 18.2-500 *Va. Code Ann.* (1950).

2. <u>The doctrine of intracorporate immunity bars Brackney's attempted business conspiracy claim under §§ 18.2-499 & 18.2-500 *Va. Code Ann.* (1950).</u>

Brackney's Complaint as set forth above seeks to state a plausible business conspiracy claim against all of the defendants as *employees or agents* of Defendant City of Charlottesville. Brackney's Ninth Cause of Action for alleged business conspiracy under § 18.2-500 *Va. Code Ann.* (1950) also fails to state a plausible claim for relief since it is barred by the intracorporate immunity doctrine,

because "corporate employees cannot conspire with each other or with the corporation." *Eplus Tech, Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). See also *Johnson v. Bella Gravida, LLC*, 105 Va. Cir. 350, 354 (Fairfax 2020), (holding that the individual defendants who are alleged to have committed their conspiracy as representatives and agents of (their employer), under the intracorporate immunity doctrine cannot legally conspire with one another.) Under the intracorporate immunity doctrine, acts of corporate agents are acts of the corporation itself and the corporate employees cannot conspire with each other or with the corporation. *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

While the Fourth Circuit Court has applied a limited "personal stake exception" to corporate officers having an independent *personal stake* in achieving the corporation's illegal objectives *Greenville Publishing Co. v. Daily Reflector, Inc.*, 296 F.2d 391 (4th Cir. 1974),  Brackney identifies no personal stake.   Moreover, the "personal stake exception" has been heavily criticized and limited as noted by the Fourth Circuit in *Eplus Tech, Inc. v. Aboud* at 179-180 such that it only applies where a co-conspirator possesses a personal stake independent of his relationship to the corporation. See also *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 705 (4th Cir. 1991). As opposed to the effects of claims in *Eplus Tech, Inc.* where Aboud stood to personally gain from an MBT bust-out scheme and could personally pocket money at MBT's expense by sending the corporation into a bankruptcy, Brackney's Complaint does not allege a personal stake exception by Boyles.  The conclusory claim of an unidentified ulterior motive is insufficient to allege a plausible claim to the personal stake exception. Moreover, since Brackney alleges no federal claims against Boyles in her Complaint and asserts supplemental federal jurisdiction only over her Virginia state law claims, Virginia law applies. No Virginia appellate court however has applied the limited personal stake exception to the intracorporate immunity doctrine to a Virginia  business conspiracy claim under § 18.2-500 *Va. Code*

*Ann.* (1950). See *Johnson v. Bella Gravide, LLC*, 105 Va. Cir. 350 (Fairfax Cir. Ct. 7/20/2020) (finding that unlike the intracorporate immunity doctrine which has its roots in *Fox*, the personal stake exception has no such foundation and there is no controlling Virginia authority recognizing a personal stake exception).

### 3.   Brackney does not allege a meeting of the minds.

A statutory business conspiracy claim requires "Any two or more persons who combine, associate, agree, mutually undertake or concert together…" *Va. Code Ann.* (1950) § 18.2-499, 500. "[A]s with common law civil conspiracy, this statute requires proof 'that the defendants have combined ... to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means.'" *Shirvinski v. United States Coast Guard*, 673 F. 3d 308, 321 (4th Cir. 2012). To survive a motion to dismiss, "the allegations must allow inference of 'a meeting of the minds and not mere parallel conduct.'" *Kamin v. United States Bank Nat'l Ass'n*, No. 1:13-cv-00058, 2013 W. L. 6409891 (W.D. Va. Dec. 9, 2013).

While the Complaint alleges conclusively that "defendants conspired and agreed to mutually undertake or concert together," (Doc. 1 at ¶¶ 66, 238), it does not contain any facts to support this legal conclusion. There are no facts in the Complaint from which the Court could plausibly infer that Boyles had a "meeting of the minds" with the remaining defendants to injure Brackney's reputation.

Moreover, Boyles is immune pursuant to § 8.01-223.2 *Va. Code Ann.* (1950) from Brackney's alleged claim of a business conspiracy to the extent it is based on statements by him alleged in ¶¶ 65, 67, 72, 73, 76-80, 140, 141, 142, 244, 266, 274 regarding matters of public concern protected under the First Amendment.

WHEREFORE, Boyles moves the Court to dismiss Plaintiff's attempted Ninth Cause of Action for Business Conspiracy.

## **CONCLUSION**

Boyles respectfully requests that the Court grant his Motion to Dismiss the only three attempted causes of action, all Virginia state law causes of action, included in Brackney's Complaint against him and to dismiss the remaining causes of action as to him which Brackney attempts against the City of Charlottesville for the reasons stated by it and the other individual with prejudice and to award him reasonable attorneys' fees and costs pursuant to § 8.01-223.2 *Va. Code Ann.* (1950) to the extent applicable.

CHARLES "CHIP" BOYLES,
FORMER CITY MANAGER OF CHARLOTTESVILLE
By Counsel

s/Richard H. Milnor
Richard H. Milnor, Esquire (VSB #14177)
Zunka, Milnor & Carter, Ltd.
414 Park Street
P O Box 1567
Charlottesville VA 22902
Telephone: (434) 977-0191
Facsimile:  (434) 977-0198
rmilnor@zmc-law.com
        *Counsel for Charles "Chip" Boyles,*
        *Former City Manager with Charlottesville*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of August, 2022, I electronically filed the foregoing

Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to all counsel of record.


s/Richard H. Milnor
Richard H. Milnor, Esquire (VSB #14177)
Zunka, Milnor & Carter, Ltd.
414 Park Street
P O Box 1567
Charlottesville VA 22902
Telephone: (434) 977-0191
Facsimile:  (434) 977-0198
rmilnor@zmc-law.com
     *Counsel for Charles "Chip" Boyles,*
     *Former City Manager of Charlottesville*