IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

RASHALL M. BRACKNEY-WHEELOCK,
PH.D.,

  Plaintiff,

v.                                       Case No. 3:22-cv-35

CITY OF CHARLOTTESVILLE, et al.,

  Defendants.

## LLOYD SNOOK'S BRIEF IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION

The City of Charlottesville ("City") lawfully terminated the employment of RaShall Brackney ("Brackney") without cause by providing the 90-days' written notice required by her contract. While that termination entitled Brackney to a generous severance package, she has decided to file suit against the City, City Councilor Lloyd Snook ("Snook"), and nine other individuals.[1] Brackney alleges that Snook defamed her by stating to CBS19 that "even black women officers were leaving" and engaged in a statutory conspiracy to harm her reputation. Snook neither defamed Brackney nor conspired with anyone to harm Brackney's reputation. The Complaint does not state a claim against Snook and should be dismissed with prejudice.

---

[1] Brackney has named as Defendants Former City Manager Chip Boyles ("Boyles"), City Attorney Lisa Robertson ("Robertson"), Former City Councilor Heather Hill ("Hill"), City Councilor Sena Magill ("Magill"), Former Police Civilian Review Board Chair Bellamy Brown ("Brown"), Former Assistant Police Chief James Mooney ("Mooney"), Acting Chief Latroy "Tito" Durrette ("Durrette"), Police Benevolent Association Central Virginia Chapter President Michael Wells ("Wells"), and Former Communications Director Brian Wheeler ("Wheeler").

## II.   FACTS[2]

The City hired Brackney to be the Chief of Police effective June 18, 2018. (ECF Doc. 1-6, at 1.) Pursuant to her contract with the City, Brackney was an at-will employee for a term of 5.5 years, with options for renewal. (ECF Doc. 1-6, at § 2.) Either party could terminate the contract without cause upon 90-days' written notice. (*Id.* at § 2(B)(2).) Under the City Manager form of government, the City Manager has sole discretion to terminate the police chief. Charlottesville Charter § 5.01.[3] In the event that the City Manager terminated the contract without cause, Brackney was entitled to 12-months' salary as severance, as well as retirement and COBRA contributions. (ECF Doc. 1-6, at § 2(B)(2).)

On June 3, 2021, Brackney received a citizen complaint via email regarding a video created by a CPD corporal. (ECF Doc. 1, at ¶ 54.) Brackney initiated an investigation into the complaint and, in the course of doing so, discovered additional videos and text messages by and between other officers on the Special Weapons and Tactics ("SWAT") Team. (*Id.* at ¶¶ 57-58.) She took disciplinary actions against the involved officers and disassembled the SWAT team. (*Id.* at ¶ 58.) As part of the investigation, Brackney held an "all hands meeting" on June 14, 2021. (*Id.* at ¶ 59.) Boyles, Hill, and Snook learned that this meeting took place. (*Id.*)

In July 2021, the Police Benevolent Association ("PBA") conducted a 17-question survey of its "Charlottesville City members regarding their current feeling of job security and satisfaction." (ECF Doc. 1, at ¶ 61; ECF Doc. 1-10, at 3; ECF Doc. 1-13; ECF Doc. 1-14.) Sixty-five people completed the survey, which revealed that the majority of respondents felt that Brackney and her Command Staff did not have the best interest of the CPD in mind, that officers did not feel supported by Command Staff, that officers were reducing their normal policing

---

[2] Snook is including in this Brief only those allegations relevant to the claims against him.
[3] *See also* Charlottesville Code §§ 2-146, 2-149, 20-2.

activities for fear of being unfairly targeted by leadership and community groups, and that they would not recommend others to apply to work for the CPD. (ECF Doc. 1-10, at 3-5; ECF Doc. 1-13; ECF Doc. 1-14.) The PBA shared the results of its survey with City Council on or around August 10, 2021. (ECF Doc. 1-10, at 2.)

To support Brackney's decision, the City issued a press release on August 20, 2021, describing Brackney's reform efforts within the CPD, as well as the disciplinary actions involving the SWAT Team. (August 20, 2021 Press Release, attached as Ex. 1.)

On August 26, 2021, Boyles met with Brackney and discussed what he saw as the two current issues facing the CPD: (1) the discipline of three SWAT officers and (2) the condition and future of the CPD. (ECF Doc. 1, at ¶ 67; ECF Doc. 1-19, at 2-3.) Boyles expressed his unwavering support for Brackney's decision to terminate the officers and confirmed that the conduct of the officers was unacceptable. (ECF Doc. 1-19, at 2.) Boyles did not support Brackney's demand to release the videos in question publicly or to provide any further information regarding the conduct to the public other than what had already been released. (*Id.*)

Boyles also discussed with Brackney the results of the PBA survey, as well as an internal survey that Brackney had previously commissioned. (*Id.*) Both surveys revealed that trust in Brackney's Command Staff and individual supervisors was a concern. (*Id.*) Boyles noted to Brackney that "we do not have the luxury of tearing this department down and building it back from scratch. It has to be rebuilt while continuing to serve the community." (*Id.*) To that end, and to move forward, he needed a plan "to first identify and acknowledge the deficiencies, then to develop a written plan of action for corrections." (*Id.* at 2-3.) Finally, Boyles informed Brackney that he needed to know her intentions for continuing as Chief—if she wanted to move

on from the City, he would help, and if she wanted to stay and lead a solution, he wanted to help. (*Id.* at 3.) But if she stayed, Boyles would require there to be a plan to improve the CPD. (*Id.*)

Brackney's response to the request for an action plan was to first tell Boyles that a plan was not needed and then to ask him what he thought should be in the plan. (Video of Oct. 4, 2021 City Council Meeting, at 4:57:15, attached as Ex. 7.) After the August 26, 2021 meeting, Boyles learned that individuals within the top leadership of CPD were going to leave if Brackney remained as Chief. (*Id.* at 4:59:30.) Fearing a further divide within the CPD and a loss of leaders of long tenure that would cripple the CPD's ability to function, Boyles decided immediate action was necessary. (Sept. 17, 2021 Op-Ed, attached as Ex. 5.)

On September 1, 2021, Boyles notified Brackney that, pursuant to her employment contract, he was terminating her employment without cause effective November 30, 2021. (ECF Doc. 1, at ¶ 68.) Boyles placed her on administrative leave for the 90-day notice period and relieved her of her duties as Chief. (Letter from C. Boyles to R. Brackney (dated Sept. 1, 2021), attached as Ex. 2.) The same day, Boyles issued a Press Release announcing Brackney's termination. (ECF Doc. 1, at ¶ 72; September 1, 2021 Press Release, attached as Ex. 3.) He issued a subsequent Press Release on September 3, 2021, announcing that Mooney was going to remain in position as Assistant Chief, and published an Op-Ed regarding the decision in the Charlottesville Daily Progress on September 17, 2021. (ECF Doc. 1, at ¶¶ 72, 76-79; September 3, 2021 Press Release, attached as Ex. 4; Ex. 5.) On September 20, 2021, and October 4, 2021, Boyles addressed the issue of Brackney's termination during the City Council meeting. (ECF Doc. 1, at ¶ 80; Video of Sept. 20, 2021 City Council Meeting, attached as Ex. 6; Ex. 7.)

On October 4, 2021, Snook gave an interview on CBS19 News. (ECF Doc. 1, at ¶¶ 101(I); 116(G); ECF Doc. 1-5.) During that interview, Snook stated that during the early months

of Brackney's tenure, he detected resentment from what he called the "Good Old Boy Network" of police, but his perspective changed when Brackney's own appointees started to resign. (ECF Doc. 1-5.) Snook said "Even Black women officers were leaving. . . These were her hand-picked people who were leaving." (*Id.*) Snook made these statements to explain why he supported Brackney's termination. (*Id.*)

### III.    ARGUMENT

#### A.    Standard of Review.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As the court pointed out in *Iqbal,* "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (emphasis added) (internal quotations omitted).

A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where the allegations permit a court to infer no more than a possibility of misconduct. *See Iqbal,* 556 U.S. at 678–79. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *See id.* at 678.

To state a plausible claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To discount

such unadorned conclusory allegations "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. This approach recognizes that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 557).

The law is clear that "in reviewing a Rule 12(b)(6) dismissal, [courts] are not confined to the four corners of the Complaint." *U.S. ex. rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F. 3d, 131, 136 (4th Cir. 2014). Documents that are explicitly incorporated into the Complaint by reference and those attached to the Complaint as exhibits may be considered. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10. The Court may also consider documents integral to the Complaint. *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A document is integral to a complaint when the claims "turn on, []or are . . . otherwise based" on the document. *Id.* Finally, the Court may take judicial notice of matters of public record. *Goldfarb v. Mayor and City Council of Baltimore*, 791 F. 3d 500, 508 (4th Cir. 2015) (noting that a court does not convert a motion to dismiss to a motion for summary judgment when it takes judicial notice of public records). This includes videos of public meetings. *See Clatterbuck v. City of Charlottesville*, 841 F. Supp. 2d 943, 952 n.7 (W.D. Va. 2012), *rev'd on other grounds* 708 F.3d 549 (4th Cir. 2013).[4] Under this exception, courts may consider "relevant facts obtained from the public record," so long as these facts are construed in the

---

[4] The Fourth Circuit reversed, because the District Court considered information from the video of a public meeting that was neither a fact nor was it considered in a light most favorable to the plaintiff. *Clatterbuck*, 708 F.3d at 557. Specifically, the District Court relied upon a citizen's comments as evidence of legislative purpose and to find that the ordinance was content neutral and necessary. *Id.* at 558.

light most favorable to the plaintiff along with any well-pleaded allegations of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986).

**The exhibits attached to the Complaint are subject to the "exhibit-prevails rule."** *See Southern Walk at Broadlands Homeowner's Ass'n v. Open Band at Broadlands, LLC*, 713 F. 3d 175, 182 (4th Cir. 2013) (citing *Fayetteville In'vrs v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991)). Pursuant to that rule, if a Plaintiff "attaches documents and relies upon the documents to form the basis for a claim or a part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *Goines*, 882 F.3d at 166. Finally, where the plaintiff attaches or incorporates a document upon which her claim is based, or when the Complaint shows that the plaintiff has adopted the contents of the document, it is proper to accept the contents of the documents over conflicting allegations in the Complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233-35 (4th Cir. 2004).

The Court may consider the following exhibits attached to this Brief and incorporated into Snook's Motion to Dismiss without converting it to a Motion for Summary Judgment.[5]

**Exhibit 1: August 20, 2021 Press Release**

Brackney references this document three places in the Complaint. (ECF Doc. 1, at ¶¶ 78, 141, 217(C).) This is a both a public record of which the Court can take judicial notice and a document incorporated into the Complaint by reference.

---

[5] Snook expressly states he does not intend for his Motion to Dismiss to be construed as a Motion for Summary Judgment.

### Exhibit 2: September 1, 2021 Termination Letter

Brackney alleges that she was provided 90-days' written notice of her termination on September 1, 2021. (ECF Doc. 1, at ¶ 137.) This is the document that she was provided and it is integral to the Complaint.

### Exhibit 3: September 1, 2021 Press Release

Brackney references this document throughout the Complaint and relies upon it as one of the bases for her claim of defamation in the Eighth Cause of Action. (ECF Doc. 1, at ¶¶ 72, 273, 276(A).) This is a both a public record of which the Court can take judicial notice and a document incorporated into the Complaint by reference.

### Exhibit 4: September 3, 2021 Press Release

Brackney references this document throughout the Complaint and purports to attach it as Exhibit A to the Complaint. (ECF Doc. 1, at ¶¶ 72, 76-77, 100, 189, 217, 292.) Exhibit A to the Complaint, (ECF Doc. 1-1), however, is a news article, not the Press Release itself. The document is both integral to the Complaint and incorporated by reference.

### Exhibit 5: September 17, 2021 Op-Ed

Brackney references this document throughout the Complaint and purports to attach it as Exhibit D to the Complaint. (ECF Doc. 1, at ¶¶ 79, 217, 276.) Exhibit D to the Complaint, (ECF Doc. 1-4), however, is an incomplete copy of the Op-Ed. The document is both integral to the Complaint and incorporated by reference.

### Exhibit 6: Video of September 20, 2021 Council Meeting

Brackney references statements purportedly made during the September 20, 2021 Council meeting and uses those statements as a basis for her defamation claim in the Eighth Cause of Action. The video depicts the exact statements that were made and is both a public record of which

the Court can take judicial notice and an exhibit that is incorporated into the Complaint by reference.

### Exhibit 7: Video of October 4, 2021 Council Meeting

Brackney attaches as Exhibit L to the Complaint a news article referencing statements made at the October 4, 2021 meeting to support her allegation that Wells' motivation for conducting the PBA survey was to get Brackney fired. (ECF Doc. 1, at ¶ 143(K).) She also alleges that Hill gave an interview to a journalist from Charlottesville Tomorrow and made certain statements, however, Exhibit L makes clear that the statements attributed to Hill in that article were actually made during the October 4, 2021 Council meeting. (*Id.* at ¶ 146(H); ECF Doc. 1-12.) Exhibit 7 depicts the exact statements that were made at the October 4, 2021 Council meeting. This is a public record of which the Court can take judicial notice and is incorporated into the Complaint by reference.

**B.      Brackney does not state a defamation claim against Snook.**

In the Eighth Cause of Action, Brackney alleges that Snook defamed her by stating to CBS19 on October 4, 2021 that he supported the termination decision because "Even Black women officers were leaving." (ECF Doc. 1, at ¶ 207.) According to Brackney, this implied that black women officers were leaving "because they did not support [Brackney] as Chief." (*Id.* at ¶ 208.) She asserts that this is defamation *per se*. (*Id.* at ¶ 209.)

To state a claim for defamation under Virginia law, Brackney must allege: (1) publication of (2) an actionable statement with (3) the requisite intent. *Schaecher v. Bouffault*, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015); *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 499 (W.D. Va. 2019).

**1.      Snook's statement is not actionable.**

"To be 'actionable,' a statement must not only be false, but also defamatory, that is, it must "tend[] so to harm the reputation of another as to lower [her] in the estimation of the community or

9

to deter third persons from associating or dealing with [her].'" *Edwards*, 378 F. Supp. 3d at 503-04 (quoting Restatement Second of Torts § 559). "Merely offensive or unpleasant statements" are not defamatory. *Id.* at 504. Instead, defamatory statements are "those that make the plaintiff appear odious; infamous; or ridiculous." *Id*. In Virginia, a statement is defamatory *per se* if it: (1) imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of duties or (2) prejudices the party in her profession or trade. *Yeagle v. Collegiate Times*, 255 Va. 293, 297, 497 S.E.2d 136, 136 (1998). Under Virginia law, the trial court decides as a threshold matter whether a statement is actionable as defamatory and whether it is defamatory *per se*. *Id.* at 296, 497 S.E.2d at 136. The statement must be viewed in the context of the writing or speech in which it is made, but also the broader social context into which the statement fits. *Edwards*, 378 F. Supp. 3d at 508.

> To be actionable *per se*,
>
> [T]he words must contain an imputation that is "necessarily hurtful" in its effect upon plaintiff's business and must affect [her] in [her] particular trade or occupation. There must be a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff.

*Fleming v. Moore*, 221 Va. 884, 890, 275 S.E.2d 632, 636 (1981) (quoting *James v. Haymes*, 160 Va. 253, 261-62, 168 S.E. 222, 226 (1933)). "The words themselves must necessarily be damaging to the [plaintiff] in [her] profession." *Id.* "Not every defamatory statement, however, is 'necessarily hurtful' to a plaintiff's business and touches the plaintiff in [her] special trade or occupation." *Id.* (citing *M. Rosenberg & Sons v. Craft*, 182 Va. 512, 519, 29 S.E.2d 375, 378 (1944)). Just because a defamatory statement may have had an adverse impact upon the plaintiff's work does not make the statement defamatory *per se* if the defamation is not

10

"necessarily hurtful" to the plaintiff's business and does not touch the plaintiff in her specific trade or occupation. *Id.*

Furthermore, under Virginia law,

> [T]the meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it cannot introduce new matter, nor extend the meaning of the words used, or make certain that which is in fact uncertain.

*Carwile v. Richmond Newspapers,* 196 Va. 1, 8, 82 S.E.2d 588, 592 (1954) (emphasis added) (citations omitted). When a court determines whether a statement is defamatory, it must look only to the "ordinary and common" meaning of the words. *Webb v. Virginia-Pilot Media Cos.*, 752 S.E.2d 808, 811 (Va. 2014). *See also Moschetti v. Office of the Inspector General*, No. 3:22-cv-24, 2022 WL 3329926, at *3, 11 (E.D. Va. Aug. 11, 2022) (holding that the statement that OSIG "models integrity, trust and ethical behavior and demonstrates the highest standards of honest[y], respect and accountability" did not imply that the plaintiff lacked those characteristics).

Snook's statement that "Even Black women officers were leaving" when explaining why he supported Boyles' decision to terminate Brackney's employment must be viewed in context. Boyles had already explained to the public that he was concerned about the chaos and upheaval in the CPD, that there was a threat of additional leaders leaving the CPD, and that CPD officers had substantial concerns of trust and confidence in CPD leadership. (ECF Doc. 1, at ¶ 217(D); Ex. 5, at 2; Ex. 6 at 1:11:38; Ex. 7 at 4:15:26.) Boyles had also told the public that he felt new leadership was necessary. (Ex. 2; Ex. 3.) This is the context in which Snook made the allegedly defamatory statement while explaining his support for the termination.

Brackney does not allege that Snook's statement was false, but rather that it falsely implied that these individuals "were leaving because they did not support [her] as Chief." (ECF Doc. 1, at ¶

11

208.) Even if the statement could be construed as reasonably capable of that meaning, it is not defamatory. That some individuals or groups of individuals did not support Brackney as Chief does not make her appear "odious, infamous, or ridiculous" and does not impute an unfitness to perform the duties of a job or a lack of integrity in the performance of duties. Nor does it prejudice Brackney in her profession. Allegations of an unsatisfactory job performance do not in and of themselves so harm a plaintiff's reputation as to lower her in the estimation of the community or deter third persons from associating or dealing with her. *McBride v. City of Roanoke Redevelopment & Hous. Auth.*, 871 F. Supp. 885, 892 (W.D. Va. 1994); *Am. Commc'n Network, Inc. v. Williams*, 264 Va. 336, 341, 568 S.E.2d 683, 686 (2002) (holding that an allegation that the plaintiff "failed to establish effective operations" was not actionable).

### 2. Snook lacked the requisite intent to make a defamatory statement.

Intent is the third element of a defamation claim. The requisite level of intent associated with a defamation action varies depending upon the plaintiff's status as a "public figure" or "private figure." Public figures are subject to a heightened "actual malice intent standard." *Edwards*, 378 F. Supp. 3d at 505. **The actual malice standard reflects our "profound national commitment to the principle that the debate on public issues should be uninhibited, robust, and wide open and that it may well include vehement, accosting, and sometimes unpleasantly sharp attacks on public figures."** *Id.* (emphasis added). Actual malice requires a defamation plaintiff to plead and prove that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964).

Whether an individual is a public figure is a question of law. The Supreme Court has held that "the 'public official' [or public figure] designation applies at the very least to those among

12

the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85, (1966). A police chief is a public figure. *Henry v. Collins*, 380 U.S. 356 (1965). That the allegedly defamatory statement was made after Brackney was notified of her termination is of no consequence.

> [F]or the purposes of protecting the public's right to criticize the government, including former officials, the fact that an individual left a position as a public official before the defamatory statement in question was made has no "decisional significance" if the performance of the former official's duties is still a matter of public concern.

*Preston v. City Council of the City of Petersburg*, No. 3:19-CV-00750, 2021 WL 1177586, at *8 (E.D. Va. Mar. 26, 2021) (citing *Rosenblatt*, 383 U.S. at 87, n.14).

Merely alleging that a defendant "acted with malice" is not sufficient to overcome a motion to dismiss. *Echtenkamp v. Loudon County Public School*, 263 F. Supp. 2d 1043, 1062 (E.D. Va. June 24, 2003). "A plausible allegation of actual malice requires 'factual allegations' that 'raise a right to relief above the speculative level.'" *Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 F. App'x 234, 240 (4th Cir. 2020) (quoting *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F. 3d 369, 377 (4th Cir. 2012)). "A conclusory allegation of knowledge of falsity or reckless disregard thereof—that is, 'a mere recitation of the legal standard'—does not constitute a plausible allegation of actual malice." *Id.* (citing *Mayfield*, 674 F.3d at 378). A complaint's assertion that "statements were made 'with the knowledge they were false and . . . so recklessly as to amount to a willful disregard for the truth' is 'entirely insufficient.'" *Id.* (citing *Mayfield*, 674 F.3d at 378).

Brackney alleges in conclusory fashion that Snook's statement was "made with actual malice, knowledge of the false statements contained therein, and/or reckless disregard for the truth."

13

(ECF Doc. 1, at ¶ 209.) This is "entirely insufficient" to plausibly allege actual malice. *Agbapuruonwu*, 821 F. App'x at 240. Brackney further alleges that "Defendant was negligent in the public broadcasting of such statements, the content of which the Defendant stated, authorized, and ratified." (ECF Doc. 1, at ¶ 212.) This is also insufficient to state a claim for defamation, because Brackney must allege **facts** to plausibly assert actual malice because of her status as a public figure. *See Fairfax v. CBS Corp.*, 2 F. 4th 286, 293-95 (4th Cir. 2021).

> 3. <u>**Snook is entitled to immunity pursuant to Virginia Code section 8.01-223.2.**</u>

Snook is entitled to immunity for the statements he made to CBS19 on October 4, 2021.

> A person shall be immune from civil liability for . . . a claim of defamation based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party . . . .

Va. Code § 8.01-223.2(A). The immunity is only lost if the statement is "made with actual or constructive knowledge that [it is] false or with reckless disregard for whether [it is] false." *Id.*

Snook's statement was on a matter of public concern—the termination of the City's Chief of Police and his reasons for supporting that decision. While Brackney alleges in conclusory fashion that Snook made the statement "with actual malice, knowledge of the false statements contained therein, and/or reckless disregard for the truth" and "knew the information in his October 4, 2021 comment was false", there are no facts in the Complaint to support these legal conclusions. (ECF Doc. 1, at ¶¶ 209, 212.) As explained *supra*, this is "entirely insufficient" not only to plausibly allege actual malice, but also to overcome the statutory immunity to which Snook's statement is entitled. Therefore, Snook is immune from the defamation claim, and the Eighth Cause of Action must be dismissed as to him. Significantly, Snook is also entitled to reasonable attorney fees and costs pursuant to the statute if he prevails on this claim. Va. Code § 8.01-223.2(B).

C. **Brackney does not state a claim against Snook for business conspiracy.**

In the Ninth Cause of Action, Brackney attempts to assert a statutory business conspiracy claim pursuant to Virginia Code section 18.2-499. (ECF Doc. 1, at ¶¶ 236-82.) That section provides, in relevant part:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatsoever . . . shall be jointly and severally guilty of a Class 1 misdemeanor.

Va. Code § 18.2-499(A). Section 18.2-500 provides a civil cause of action for "any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499 . . . ." Va. Code § 18.2-500(A).

1. **Brackney does not allege damage to business or property interests.**

Virginia Code sections 18.2-499 and -500 protect business-related interests, not personal reputation and interests. *See, e.g. Andrews v. Ring*, 266 Va. 311, 319, 585 S.E.2d 780, 784 (2003). "The business conspiracy statute requires the alleged injury to be to a business or a business owner, not to an individual's employment interests." *Cox v. MAG Mut. Ins. Co.*, No. 3:14-cv-377, 2015 WL 1640513, *2 (E.D. Va. Apr. 9, 2015). "An individual does not have a business interest if 'he neither owned a company, did business as a separate organization, nor had a separate tax identification number for his contractor status.'" *Id.* at *6 n.17 (quoting *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012)).

> [T]he federal district courts in Virginia have consistently held that a right of action is afforded [under these statutes] only when malicious conduct is directed at one's *business*, not one's *person*, and that the statute focuses upon conduct directed at property, *i.e.*, one's business and applies only to conspiracies resulting in business-related damages.

*Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985) (internal quotations omitted, alterations and emphasis in original). The Fourth Circuit has consistently recognized that injuries to

15

professional reputations are not business-related claims. Instead they relate only to employment, and possible injury to employment reputation, outside of the ambit of a statutory conspiracy claim. *Id.*

Brackney alleges that "Defendants conspired and agreed to mutually undertake or concert together for the purpose of willfully and maliciously injuring [her] reputation." (ECF Doc. 1, at ¶ 238.) She alleges damages in the form of "substantial losses incurred in seeking subsequent comparable employment, earnings, deferred compensation, earning capacity, back pay, front pay, and other employment benefits" as well as "physical personal injuries, embarrassment, humiliation, mental anguish, and other general damages." (*Id.* at ¶¶ 280-81.) These damages relate only to Brackney's personal and employment interests and, therefore, are outside of the domain of a statutory conspiracy claim. The Ninth Cause of Action should be dismissed with prejudice.

### 2. **Brackney's claim is barred by the intracorporate immunity doctrine.**

Even if Brackney could allege the necessary elements and damages for a statutory conspiracy claim, such a claim is barred by the doctrine of intracorporate immunity.

To state a claim for statutory conspiracy, the Complaint must allege a combination of two or more persons. *See* Va. Code § 18.2-499(A) (requiring "two or more persons"). In the context of conspiracy, the Supreme Court of Virginia has established that "a corporation, like an individual, cannot conspire with itself." *Bowman v. State Bank of Keysville*, 229 Va. 534, 541, 331 S.E.2d 797, 801 (1985). The intracorporate immunity doctrine "deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting within the scope of their employment/agency." *Vollette v. Watson*, 937 F. Supp. 2d 706, 727 (E.D. Va. 2013) (internal

16

citations omitted). This analysis applies to both common law and statutory conspiracy claims. *See id.; Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000). Thus, no claim for conspiracy can lie against agents or employees of the same entity acting within the scope of their employment/agency. *See Perk v. Vector Resources Group, Ltd.,* 253 Va. 310, 317, 485 S.E.2d 140 (1997); *Lewin v. Cooke,* 95 F. Supp. 2d 513, 524 (E.D. Va. 2000).

As pled, Defendants Boyles, Robertson, Durrette, Mooney, and Wheeler were all employees of the City alleged to have been acting in their individual capacities as employees and/or agents of the City. (ECF Doc. 1, at ¶¶ 3-4, 9-10, 12.) Defendants Hill, Snook, and Magill are or were members of City Council alleged to have been acting in their individual capacities as employees and/or agents of the City. (*Id.* at ¶¶ 5-7.) Brackney further alleges that, at all relevant times, Defendants Brown and Wells were "acting in [their] individual capacit[ies] as an employee and/or agent of Defendant City of Charlottesville, and Defendant City of Charlottesville is liable for [their] actions . . . on the basis of *respondeat superior* . . . ." (*Id.* at ¶¶ 8, 11.) Because Brackney pleaded that Defendants are employees or agents of the City acting within the scope of their employment or agency, the doctrine of intracorporate immunity bars Brackney's statutory conspiracy claim.

    **3.**    **<u>Brackney does not allege a meeting of the minds.</u>**

A statutory business conspiracy claim requires "two or more persons [to] combine, associate, agree, mutually undertake or concert together . . ." Va. Code § 18.2-499, -500. "[A]s with common law conspiracy, this statute requires proof 'that the defendants have combined . . . to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means.'" *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 321 (4th Cir. 292) (quoting *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987)). To survive a

motion to dismiss, "the allegations must allow inference of 'a meeting of the minds and not mere parallel conduct.'" *Kamin v. United States bank Nat'l Ass'n*, No. 1:13-cv-00058, 2013 WL 6409891, at *3 (W.D. Va. Dec. 9, 2013) (quoting *AWP, Inc. v. Commonwealth Excavating, Inc.*, No. 5:13-cv-031, 2013 WL 3830500, at *3 (W.D. Va. July 24, 2013)).

While the Complaint alleges conclusorily that "Defendants conspired and agreed to mutually undertake or concert together," (ECF Doc. 1, at ¶¶ 66, 238), it does not contain any facts to support this legal conclusion. There are no facts in the Complaint from which the Court could plausibly infer that Snook had a "meeting of the minds" with the remaining Defendants to injure Brackney's reputation.

**D.    The remaining causes of action in the Complaint are not asserted against Snook.**

The Fourth Cause of Action of the Complaint is the only cause of action that specifically articulates the Defendants against which the cause of action is asserted. Snook is not named as a Defendant in that Cause of Action. The Title VII claims cannot be asserted against the individual Defendants, as there is no individual liability under Title VII. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998). Therefore, the First, Second, Third, and Fifth Causes of Action cannot be asserted against the individual Defendants. Furthermore, the Virginia Human Rights Act applies only to an "employer," defined as a person employing 15 or more employees. Thus, the Tenth Cause of Action also cannot lie as to the individual defendants. To the extent the Court construes any of the other causes of action as being asserted against Snook, they fail to state a claim for the reasons asserted by the City and the remaining Defendants in their Briefs in Support of Motion to Dismiss, and specifically incorporated herein by reference.

## IV. CONCLUSION

For all of the foregoing reasons, Lloyd Snook, by counsel, respectfully requests that this Court grant his Motion to Dismiss, dismiss the Complaint against him with prejudice, award reasonable attorney fees pursuant to Virginia Code section 8.01-223.2, and for such other relief that is just and proper.

**LLOYD SNOOK**

By Counsel

 s/David P. Corrigan
David P. Corrigan (VSB No. 26341)
Melissa Y. York (VSB No. 77493)
Counsel for Lloyd Snook
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
myork@hccw.com

# **C E R T I F I C A T E**

      I hereby certify that on the 30th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alexander L. Taylor, Jr., Esq.
Alex Taylor Law
1622 W. Main Street
Richmond, VA 23220
804-239-9232 - Phone
866-446-6167 - Fax
alextaylor@alextaylorlaw.com

William M. Stanley, Jr., Esq.
Autumn Dawn Price Johnson, Esq.
The Stanley Law Groupl PLLC
13508 Booker T. Washington Hwy
Moneta, VA 24121
540-721-6028 - Phone
540-721-6405 - Fax
rsmith@vastanleylawgroup.com
ajohnson@vastanleylawgroup.com

Charles Tucker, Jr., Esq.
The Tucker Moore Group
8181 Professional Place, Suite 207
Hyattsville, MD 20785
301-577-1175 - Phone
240-467-5678 - Fax
charles@tuckerlawgroupllp.com

Richard H. Milnor, Esq.
VSB No. 14177
Zunka, Milnor & Carter, Ltd.
P.O. Box 1567
Charlottesville, VA 22902
434-977-0191 x234 - Phone
434-977-0198 - Fax
RMilnor@zmc-law.com

 

s/David P. Corrigan
David P. Corrigan (VSB No. 26341)
Melissa Y. York (VSB No. 77493)
Counsel for Lloyd Snook
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
myork@hccw.com