IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

RASHALL M. BRACKNEY-WHEELOCK, PH.D.,

  Plaintiff,

v.                                              Case No. 3:22-cv-35

CITY OF CHARLOTTESVILLE, et al.

  Defendants.

## BELLAMY BROWN'S BRIEF IN SUPPORT OF MOTION TO DISMISS

### I.    INTRODUCTION

The City of Charlottesville ("City") lawfully terminated the employment of RaShall Brackney ("Brackney") without cause by providing the 90-days' written notice required by her contract. While that termination entitled Brackney to a generous severance package, she has decided to file suit against the City, former Police Civilian Review Board ("PCRB") Chair Bellamy Brown ("Brown"), and nine other individuals.[1] Brackney alleges that Brown and others tortiously interfered with her employment contract and engaged in a statutory conspiracy to harm her reputation.

Brown took no action to improperly interfere with Brackney's at-will employment contract. Nor did he conspire with anyone to harm Brackney's reputation. The Complaint does not state a claim against Brown and should be dismissed with prejudice.

---

[1] Brackney has also named as Defendants Former City Manager Chip Boyles ("Boyles"), City Attorney Lisa Robertson ("Robertson"), Former City Councilor Heather Hill ("Hill"), Current Mayor Lloyd Snook ("Snook"), City Councilor Sena Magill ("Magill"), current Acting Chief Tito Durrette ("Durrette"), former Assistant Police Chief James Mooney ("Mooney"), Police Benevolent Association Central Virginia Chapter President Michael Wells ("Wells"), and Former Communications Director Brian Wheeler ("Wheeler").

## II.     ALLEGATIONS[2]

The City hired Brackney to be the Chief of Police effective June 18, 2018. (ECF Doc. 1-6, at 1.) Pursuant to her contract with the City, Brackney was an at-will employee for a term of 5.5 years, with options for renewal. (ECF Doc. 1-6, at § 2.) Either party could terminate the contract without cause upon 90-days' written notice. (*Id.* at § 2(B)(2).) Under the City Manager form of government, the City Manager has sole discretion to terminate the police chief. Charlottesville Charter § 5.01.[3] In the event that the City Manager terminated the contract without cause, Brackney was entitled to 12-months' salary as severance, as well as retirement and COBRA contributions. (ECF Doc. 1-6, at § 2(B)(2).)

On June 3, 2021, Brackney received a citizen complaint via email regarding a video created by a CPD corporal. (ECF Doc. 1, at ¶ 54.) Brackney initiated an investigation into the complaint and, in the course of doing so, discovered additional videos and text messages by and between other officers on the Special Weapons and Tactics ("SWAT") Team. (*Id.* at ¶¶ 57-58.) She took disciplinary actions against the involved officers and disassembled the SWAT team. (*Id.* at ¶ 58.) As part of the investigation, Brackney held an "all hands meeting" on June 14, 2021. (*Id.* at ¶ 59.)

On July 12 and 14, and August 2, 2021, Brown exchanged text messages with Hill regarding his frustration that he did not advance in the interview process for the position of Executive Director of the PCRB, as well as the composition of the panel used for the process only containing one PCRB member and including a CPD representative. (*Id.* at ¶¶ 142(A)-(B), 245-46; ECF Doc. 1-7.) He stated that "it's not right for this town to be hijacked by two individuals. That's a disservice to this community as a whole," and "It just occurred to me, in

---

[2] Brown is including in this Brief only those allegations relevant to the claims against him.
[3] *See also* Charlottesville Code §§ 2-146, 2-149, 20-2.

this oversight process more deference is given to a person city leadership has already decided to terminate." (ECF Doc. 1, at ¶¶ 142(A)-(B).)

In July 2021, the Police Benevolent Association ("PBA") conducted a 17-question survey of its "Charlottesville City members regarding their current feeling of job security and satisfaction." (ECF Doc. 1, at ¶ 61; ECF Doc. 1-10, at 3; ECF Doc. 1-13; ECF Doc. 1-14.) Sixty-five people completed the survey, which revealed that the majority of respondents felt that Brackney and her Command Staff did not have the best interest of the CPD in mind, that officers did not feel supported by Command Staff, that officers were reducing their normal policing activities for fear of being unfairly targeted by leadership and community groups, and that they would not recommend others to apply to work for the CPD. (ECF Doc. 1-10, at 3-5; ECF Doc. 1-13; 1-14.) The PBA shared the results of its survey with City Council on or around August 10, 2021. (ECF Doc. 1-10, at 2.) Brackney alleges that Brown participated in the survey process. (ECF Doc. 1, at ¶ 61.)

On August 10 and 12, 2021, Brown exchanged emails with William Mendez, then Vice-Chair of the PCRB regarding a proposed statement he was going to read at the August 12, 2021 PCRB meeting. (ECF Doc. 1, at ¶ 142(C)-(D), 251-52; ECF Doc. 1-8.) This included statements that "there is a possibility that between now and Thursday the matter may get resolved and there will be no statement," that "something more significant may happen," and that Mendez believed the draft statement depicted a "hidden objective" to "get rid of the Chief." (ECF Doc. 1, at ¶¶ 142(C)-(D); ECF Doc. 1-8.)

On August 12, 2021, Brown made a statement during the PCRB meeting. (ECF Doc. 1, at ¶¶ 142(E)-(F); Brown Statement, attached as Ex. 1.) In that statement, Brown stated,

> I believe there is a crisis in leadership and morale in the Charlottesville Police Department. . . . This statement is made without regarding to race or gender, but

3

rather leadership capacity and effectiveness. . . . Through additional conversations with senior local government leaders, the problems with police morale and unresponsive and inflexible management have been known for some time; but no action has been taken to date. It is my recommendation that community members email and call all members of City Council and the City Manager everyday until action is taken on behalf of the greater good of the community.

(Ex. 1.)

On September 1, 2021, Boyles notified Brackney that, pursuant to her employment contract, he was terminating her employment without cause effective November 30, 2021. (ECF Doc. 1, at ¶ 68.)

## III.   ARGUMENT

**A.   Standard of Review.**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a court to dismiss an action if the Complaint fails to state a claim upon which relief can be granted. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In reviewing a defendant's motion under Rule 12(b)(6), a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Legal conclusions, however, enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As the court pointed out in *Iqbal,* "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (emphasis added) (internal quotations omitted).

A court should grant a motion to dismiss, however, where the allegations are nothing more than legal conclusions, or where the allegations permit a court to infer no more than a possibility of misconduct. *See Iqbal,* 556 U.S. at 678–79. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *See id.* at 678.

To state a plausible claim for relief, the Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To discount such unadorned conclusory allegations "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. This approach recognizes that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 557).

The law is clear that "in reviewing a Rule 12(b)(6) dismissal, [courts] are not confined to the four corners of the Complaint." *U.S. ex. rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F. 3d, 131, 136 (4th Cir. 2014). Documents that are explicitly incorporated into the Complaint by reference and those attached to the Complaint as exhibits may be considered. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10. The Court may also consider documents integral to the Complaint. *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A document is integral to a complaint when the claims "turn on, []or are . . . otherwise based" on the document. *Id.* Finally, the Court may take judicial notice of matters of public record. *Goldfarb v. Mayor and City Council of Baltimore*, 791 F. 3d 500, 508 (4th Cir. 2015) (noting that a court does not convert a motion to dismiss to a motion for summary judgment when it takes judicial notice of public records). Under this exception, courts may consider "relevant facts obtained from the public record," so long as these facts are construed in the light most favorable to the plaintiff along with any well-pleaded allegations of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986).

**The exhibits attached to the Complaint are subject to the "exhibit-prevails rule."** *See So. Walk at Broadlands Homeowner's Ass'n v. Open Band at Broadlands, LLC*, 713 F. 3d 175, 182 (4th Cir. 2013) (citing *Fayetteville In'vrs v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991)). Pursuant to that rule, if a Plaintiff "attaches documents and relies upon the documents to form the basis for a claim or a part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002); *Goines*, 882 F.3d at 166. Finally, where the plaintiff attaches or incorporates a document upon which her claim is based, or when the Complaint shows that the plaintiff has adopted the contents of the document, it is proper to accept the contents of the documents over conflicting allegations in the Complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233-35 (4th Cir. 2004).

The Court may consider the following exhibit attached to this Brief and incorporated into Brown's Motion to Dismiss without converting it to a Motion for Summary Judgment.[4]

**Exhibit 1: August 12, 2021 Statement to PCRB**

Brackney relies upon Brown's prepared statement delivered at the August 12, 2021 PCRB meeting to support her claim of tortious interference in the Fourth Cause of Action. (ECF Doc. 1, at ¶¶ 142(E)-(F).) She attaches as Exhibit H email correspondence regarding the statement and various drafts of the statement. (ECF Doc. 1-8.) The document attached hereto as Exhibit 1 is the final version of the statement that Brown read on August 12, 2021, and which serves as the basis of Brackney's claim against him. It is both integral to the Complaint and incorporated into the Complaint by reference.

---

[4] Brown expressly states he does not intend for his Motion to Dismiss to be construed as a Motion for Summary Judgment.

B.  **Brackney does not state a claim against Brown for tortious interference with contract.**

In the Fourth Cause of Action, Brackney alleges that Mooney, Boyles, Brown, Wells, Magill, Robertson, and Hill tortiously interfered with her at-will employment with the City. (ECF Doc. 1, at ¶¶ 132-48.)

In Virginia, there are four necessary elements to establish a *prima facie* case for tortious interference with contract or contract expectancy:

> (1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985).

1.  **A party cannot interfere with its own contract.**

A party or a party's agent cannot intentionally interfere with its own contract. *See, e.g. Francis Hospitality, Inc. v. Read Properties,* LLC, 296 Va. 358, 363, 820 S.E.2d 607, 610 (2018); *Fox v. Deese*, 234 Va. 412, 427, 362 S.E.2d 699, 708 (1987) (citing *Chaves*, 230 Va. at 120, 335 S.E.2d at 102); *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 448 (E.D. Va. 2002)).

While Brackney alleges in conclusory fashion that "at all times relevant to this cause of action, . . . Defendant Brown . . . [was] not acting within the course and scope of [his] employment but rather [was] acting with ulterior motives and without an honest belief that [his] actions would benefit [his] employer, Defendant City of Charlottesville, Virginia," (ECF Doc. 1, at ¶ 133), that is a bald legal conclusion that the Court is not required to accept as true for purposes of this Motion to Dismiss. *Iqbal* at 678-79; *Twombly*, 550 U.S. at 557. Additionally, it contradicts an earlier allegation that "[a]t all times relevant to the occurrences complained of

7

herein," Brown "was acting in his individual capacity as an employee and/or agent of Defendant City of Charlottesville . . . ." (ECF Doc. 1, at ¶ 8.) There are no factual allegations in the Complaint to support the allegation that Brown acted outside of his role as the Chair of the PCRB when performing any of the acts outlined in the Complaint. In fact, it was precisely because of his position as Chair of the PCRB that he was acting at all. Because Brown, as an agent of the City, cannot interfere with the contract between the City and Brackney, the Fourth Cause of Action fails to state a claim and should be dismissed with prejudice.

### 2. Brackney does not allege that Brown used improper methods.

When a contract is terminable at will, or when a plaintiff seeks to recover for tortious interference with contact expectancy, a plaintiff must plead and prove an additional element: that the defendant employed improper methods to interfere with the contract. *Duggin v. Adams*, 234 Va. 221, 226-27, 360 S.E.2d 832, 836 (1987); *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 413, 493 S.E.2d 375, 378 (1997). Improper methods include "those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common law rules," as well as "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Duggin*, 234 Va. at 227, 360 S.E.2d at 836. Improper methods do not include "actions solely motivated by spite, ill will and malice" toward the plaintiff. *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559, 708 S.E.2d 867, 870-71 (2011).

The only allegations regarding Brown are that he texted with Hill regarding the selection process for the position of Executive Director of the PCRB and made a public statement at the August 12, 2021 PCRB meeting regarding his opinion that there was a crisis of leadership within

8

the CPD. (ECF Doc. 1, at ¶¶ 142.) There is nothing illegal or independently tortious about this conduct. These acts cannot establish a claim of tortious interference.

> 3. **Brown is immune from the claim of tortious interference pursuant to Virginia Code section 8.01-223.2.**

Brackney alleges that Brown's statements at the August 12, 2021 PCRB meeting "contributed directly towards [her] termination." (ECF Doc. 1, at ¶ 142(E).) Brown enjoys immunity for those statements.

> A person shall be immune from civil liability for . . . a claim of tortious interference with an existing contract or a business contractual expectancy . . . based solely on statements (i) regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party or (ii) made at a public hearing before the governing body of any locality or other political subdivision, or the boards, commissions, agencies, and authorities thereof, and other governing bodies of any local governmental entity concerning matters properly before such body.

Va. Code § 8.01-223.2(A). The immunity is only lost if the statement is "made with actual or constructive knowledge that [it is] false or with reckless disregard for whether [it is] false." *Id.*

Brown not only made a statement at a public hearing before a City board, but he also made statements regarding a matter of public concern—the CPD and its leadership. There is no allegation that Brown's statement was false, that Brown had actual or constructive knowledge that it was false, or that he acted with reckless disregard that it was false. Therefore, Brown is immune from the claim for tortious interference and the Fourth Cause of Action must be dismissed as to him. Significantly, Brown is also entitled to reasonable attorney fees and costs pursuant to the statute if he prevails on this claim. Va. Code § 8.01-223.2(B).

C. **Brackney does not state a claim against Brown for business conspiracy.**

In the Ninth Cause of Action, Brackney attempts to assert a statutory business conspiracy claim pursuant to Virginia Code section 18.2-499. (ECF Doc. 1, at ¶¶ 236-82.) That section provides, in relevant part:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatsoever . . . shall be jointly and severally guilty of a Class 1 misdemeanor.

Va. Code § 18.2-499(A). Section 18.2-500 provides a civil cause of action for "any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499 . . . ." Va. Code § 18.2-500(A).

1. **Brackney does not allege damage to business or property interests.**

Virginia Code sections 18.2-499 and -500 protect business-related interests, not personal reputation and interests. *See, e.g. Andrews v. Ring*, 266 Va. 311, 319, 585 S.E.2d 780, 784 (2003). "The business conspiracy statute requires the alleged injury to be to a business or a business owner, not to an individual's employment interests." *Cox v. MAG Mut. Ins. Co.*, No. 3:14-cv-377, 2015 WL 1640513, *2 (E.D. Va. Apr. 9, 2015). "An individual does not have a business interest if 'he neither owned a company, did business as a separate organization, nor had a separate tax identification number for his contractor status.'" *Id.* at *6 n.17 (quoting *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012)).

> [T]he federal district courts in Virginia have consistently held that a right of action is afforded [under these statutes] only when malicious conduct is directed at one's *business*, not one's *person*, and that the statute focuses upon conduct directed at property, *i.e.*, one's business and applies only to conspiracies resulting in business-related damages.

*Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985) (internal quotations omitted, alterations and emphasis in original). The Fourth Circuit has consistently recognized that injuries to

10

professional reputations are not business-related claims. Instead they relate only to employment, and possible injury to employment reputation, which is outside of the ambit of a statutory conspiracy claim. *Id.*

Brackney alleges that "Defendants conspired and agreed to mutually undertake or concert together for the purpose of willfully and maliciously injuring [her] reputation." (ECF Doc. 1, at ¶ 238.) She alleges damages in the form of "substantial losses incurred in seeking subsequent comparable employment, earnings, deferred compensation, earning capacity, back pay, front pay, and other employment benefits" as well as "physical personal injuries, embarrassment, humiliation, mental anguish, and other general damages." (*Id.* at ¶¶ 280-81.) These damages relate only to Brackney's personal and employment interests and, therefore, are outside of the domain of a statutory conspiracy claim. The Ninth Cause of Action should be dismissed with prejudice.

2. **Brackney's claim is barred by the intracorporate immunity doctrine.**

Even if Brackney could allege the necessary elements and damages for a statutory conspiracy claim, such a claim is barred by the doctrine of intracorporate immunity.

To state a claim for statutory conspiracy, the Complaint must allege a combination of two or more persons. *See* Va. Code § 18.2-499(A) (requiring "two or more persons"). In the context of conspiracy, the Supreme Court of Virginia has established that "a corporation, like an individual, cannot conspire with itself." *Bowman v. State Bank of Keysville*, 229 Va. 534, 541, 331 S.E.2d 797, 801 (1985). The intracorporate immunity doctrine "deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting within the scope of their employment/agency." *Vollette v. Watson*, 937 F. Supp. 2d 706, 727 (E.D. Va. 2013) (internal

11

citations omitted). This analysis applies to both common law and statutory conspiracy claims. *See id.; Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000). Thus, no claim for conspiracy can lie against agents or employees of the same entity acting within the scope of their employment/agency. *See Perk v. Vector Resources Group, Ltd.,* 253 Va. 310, 317, 485 S.E.2d 140 (1997); *Lewin v. Cooke,* 95 F. Supp. 2d 513, 524 (E.D. Va. 2000).

As pled, Defendants Boyles, Robertson, Durrette, Mooney, and Wheeler were all employees of the City alleged to have been acting in their individual capacities as employees and/or agents of the City. (ECF Doc. 1, at ¶¶ 3-4, 9-10, 12.) Defendants Hill, Snook, and Magill are or were members of City Council alleged to have been acting in their individual capacities as employees and/or agents of the City. (*Id.* at ¶¶ 5-7.) Brackney further alleges that, at all relevant times, Defendants Brown and Wells were "acting in [their] individual capacit[ies] as an employee and/or agent of Defendant City of Charlottesville, and Defendant City of Charlottesville is liable for [their] actions . . . on the basis of *respondeat superior* . . ." (*Id.* at ¶¶ 8, 11.) Because Brackney pleaded that Defendants are employees or agents of the City acting within the scope of their employment or agency, the doctrine of intracorporate immunity bars Brackney's statutory conspiracy claim.

### 3. **Brackney does not allege a meeting of the minds.**

A statutory business conspiracy claim requires "two or more persons [to] combine, associate, agree, mutually undertake or concert together . . ." Va. Code § 18.2-499, -500. "[A]s with common law conspiracy, this statute requires proof 'that the defendants have combined . . . to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means.'" *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) (quoting *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987)). To survive a

motion to dismiss, "the allegations must allow inference of 'a meeting of the minds and not mere parallel conduct.'" *Kamin v. United States bank Nat'l Ass'n*, No. 1:13-cv-00058, 2013 WL 6409891, at *3 (W.D. Va. Dec. 9, 2013) (quoting *AWP, Inc. v. Commonwealth Excavating, Inc.*, No. 5:13-cv-031, 2013 WL 3830500, at *3 (W.D. Va. July 24, 2013)).

While the Complaint alleges conclusorily that "Defendants conspired and agreed to mutually undertake or concert together," (ECF Doc. 1, at ¶¶ 66, 238), it does not contain any facts to support this legal conclusion. There are no facts in the Complaint from which the Court could plausibly infer that Brown had a "meeting of the minds" with the remaining Defendants to injure Brackney's reputation.

### D.  **The remaining causes of action in the Complaint are not asserted against Brown.**

The Fourth Cause of Action of the Complaint is the only cause of action that specifically articulates the Defendants against which the cause of action is asserted. The Title VII claims cannot be asserted against the individual Defendants, as there is no individual liability under Title VII. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998). Therefore, the First, Second, Third, and Fifth Causes of Action cannot be asserted against the individual Defendants. Furthermore, the Virginia Human Rights Act applies only to an "employer," defined as a person employing 15 or more employees. Thus, the Tenth Cause of Action also cannot lie as to the individual defendants. To the extent the Court construes any of the other causes of action as being asserted against Brown, they fail to state a claim for the reasons asserted by the City and the remaining Defendants in their Briefs in Support of Motion to Dismiss, and specifically incorporated herein by reference.

## IV.  CONCLUSION

For all of the foregoing reasons, Bellamy Brown, by counsel, respectfully requests that this Court grant his Motion to Dismiss and dismiss the Complaint against him with prejudice, award reasonable attorney fees pursuant to Virginia Code section 8.01-223.2, and for such other relief that is just and proper.

**BELLAMY BROWN**

By Counsel

 s/David P. Corrigan
David P. Corrigan (VSB No. 26341)
Melissa Y. York (VSB No. 77493)
Counsel for Bellamy Brown
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
dcorrigan@hccw.com
myork@hccw.com

## **C E R T I F I C A T E**

   I hereby certify that on the 30th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alexander L. Taylor, Jr., Esq.
Alex Taylor Law
1622 W. Main Street
Richmond, VA 23220
804-239-9232 - Phone
866-446-6167 - Fax
alextaylor@alextaylorlaw.com

William M. Stanley, Jr., Esq.
Autumn Dawn Price Johnson, Esq.
The Stanley Law Groupl PLLC
13508 Booker T. Washington Hwy
Moneta, VA 24121
540-721-6028 - Phone
540-721-6405 - Fax
rsmith@vastanleylawgroup.com
ajohnson@vastanleylawgroup.com

Charles Tucker, Jr., Esq.
The Tucker Moore Group
8181 Professional Place, Suite 207
Hyattsville, MD 20785
301-577-1175 - Phone
240-467-5678 - Fax
charles@tuckerlawgroupllp.com

Richard H. Milnor, Esq.
VSB No. 14177
Zunka, Milnor & Carter, Ltd.
P.O. Box 1567
Charlottesville, VA 22902
434-977-0191 x234 - Phone
434-977-0198 - Fax
RMilnor@zmc-law.com

             <u>s/David P. Corrigan</u>
             David P. Corrigan (VSB No. 26341)
             Melissa Y. York (VSB No. 77493)
             Counsel for Bellamy Brown
             Harman, Claytor, Corrigan & Wellman
             P.O. Box 70280
             Richmond, Virginia  23255
             804-747-5200 - Phone
             804-747-6085 - Fax
             dcorrigan@hccw.com
             myork@hccw.com