**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

RASHALL M. BRACKNEY-WHEELOCK, PH.D.,

     *Plaintiff,*

v.                                        Civil Action No.:  3:22-cv-35

CITY OF CHARLOTTESVILLE, et al.,

     *Defendants.*

**<u>BOYLES'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS</u>**

     COMES NOW your Defendant Charles "Chip" Boyles, ("Boyles"), former City Manager of the City of Charlottesville, by counsel, and in reply/rebuttal to Plaintiff's Memorandum in Support of Plaintiff's Opposition to Defendant Charles "Chip" Boyles' Motion to Dismiss (Doc. 54) submits the following arguments and authorities as to the only three counts in Plaintiff Rashall M. Brackney-Wheelock, Ph.D.'s ("Brackney") Complaint (Doc. 1) she attempted to assert against Boyles:

**<u>1. BRACKNEY'S FOURTH CAUSE OF ACTION FAILS TO PLEAD AND
ALLEGE A PLAUSIBLE CLAIM OF TORTIOUS INTERFERENCE WITH
HER *AT WILL* EMPLOYMENT CONTRACT WITH THE CITY AGAINST CITY
MANAGER CHARLES "CHIP" BOYLES</u>**

     Brackney in her Response in Opposition to Boyles's Motion to Dismiss of her attempted supplemental state law claim of tortious interference with her admitted *at will* employment contract with the City does not address or offer any authorities in opposition to Boyles's dispositive argument as to this attempted cause of action that under settled law in Virginia a person cannot interfere with their own contract. *Francis Hospitality, Inc. v. Read Properties, LLC*, 296 Va. 358, 363 (2018). Under Virginia law, the City Manager acting for the City as a party to the *at will* employment contract with Brackney had the right to terminate her contract without any cause or reason. (Doc. 1-6 & 21-1). The

City of Charlottesville pursuant to its Charter under § 5(b) has a city manager form of government. Boyles, under the City Charter, simply had no power as an individual to terminate Brackney's Employment Agreement with the City of Charlottesville. Pursuant to § 5.01 of the City Charter, only Boyles acting as the City Manager had the executive and administrative authority and the right to employ and, as in this case, discharge employees under his control, including Police Chief Brackney. Further, Boyles as the City Manager had the sole power to dismiss, suspend, and discipline employees such as the Police Chief, including the power to place employees such as Brackney on administrative leave with pay and relieve the employee of their duties during that time period. Further, pursuant to § 20-3 (a) of the Charlottesville City Code, the Chief of Police is subject to the orders and regulations of the City Manager and the Council. Former City Manager Boyles as City Manager pursuant to the City Charter and City Ordinances was the only person who could act as the City. When he terminated Police Chief Brackney's *at will* employment contract with the City he acted as the City not as a third party. Boyles under *Francis Hospitality* was incapable of tortiously interfering with Brackney's City employment *at will* contract.

Additionally, Brackney's Complaint fails because her Complaint does not actually plead "improper methods." Under *Duggins v. Adams*, 234 Va. 221, 226-227 (1987), when a contract is terminable at will, such as in this case, the Complaint must actually make an actual allegation that a third party employed "improper methods." Nowhere in Brackney's Complaint does she actually plead "improper methods" and for that reason alone her Fourth Cause of Action in her Complaint fails to state a claim for relief. Brackney relies in her Opposition to Boyles's Motion to Dismiss this claim on *Dunn v. McCormack* & *MacPherson v. Connolly*, 281 Va. 553 (2011), which actually supports Boyles's argument. The Virginia Supreme Court in *Dunn* relying on its prior holding in *Duggins* again held that in addition to the other four elements required to be pled, in order to state a tortious

interference claim "when a contract is terminable at will, a plaintiff in order to present a prima facie case of tortious interference must **allege**…that the defendant employed improper methods." (emphasis supplied). *Dunn*, 281 Va. at 559. Dunn's Amended Complaint alleged as required that "Connolly used improper means and methods to interfere." *Dunn*, 281 Va. at 556. Brackney's Complaint fails to do so. In her response, Brackney argues that her Complaint (Doc. 1) provides facts that would support an allegation of improper methods under *Dunn* by Boyles if she had actually so pled. However, Brackney cannot amend her Complaint under settled law through briefing or oral advocacy. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F. 3d 175, 184-85  (4th Cir. 2013).

Moreover, even if Brackney had actually pled "improper methods," the only facts as to Boyles Brackney relies on in her Complaint (Doc. 1) are  in the following paragraphs: (Doc. 1 ¶ 226) – a 8/18/2021 three-page FOIA request only to the City by Brackney, which requested records relating to interviews by Boyles of CPD personnel; (Doc. 1 ¶ 140 (A)) simply being advised by Defendant Hill and Defendant Snook of a 6/14/2021 "all-hands meeting," which she does not allege in her Complaint that Boyles attended or for that matter whether the meeting ever occurred; (Doc. 1 ¶ 140 (B)) attending a 8/18/2021 meeting as City Manager with Defendant Mooney to discuss a PBA survey, which had been "specifically" generated by Defendants Bellamy Brown and Michael Wells according to the Complaint (Doc. 1 ¶ 61) (which Brackney conceded in her Complaint that Boyles characterized as a "hit job" by the PBA); (Doc. 1 ¶  140 (C)) 8/10/2021 meeting with PBA Representative Wells to discuss the PBA survey and listen to audio recordings, which Brackney also notes in her Complaint that Boyles characterized as "nothing new" after listening to them; and (Doc. 1 ¶ 140 (D)-(Q)) post-termination notice actions related to City Manager Boyles placement of her on

3

administrative leave, all fail to support individually and collectively a plausible allegation of illegal or independently tortious conduct by Boyles.

Wherefore, Boyles respectfully requests that, for the reasons previously stated by him as well as those by co-defendants in their briefs and reply briefs supporting Motions to Dismiss this Fourth Cause of Action, the Court grant his Motion to Dismiss this claim with prejudice.

## 2. BRACKNEY'S EIGHTH CAUSE OF ACTION FAILS TO STATE A PLAUSIBLE CLAIM OF DEFAMATION AGAINST BOYLES BECAUSE IN ADDITION TO HIS ENTITLEMENT TO STATUTORY IMMUNITY UNDER § 8.01-223.2 *VA CODE ANN.* (1950), EACH OF THE QUOTED STATEMENTS ALLEGEDLY MADE BY BOYLES THAT SHE RELIES ON IN HER COMPLAINT IN ¶¶ 217 (A-E) ARE NOT DEFAMATORY TAKEN IN THEIR PLAIN AND NATURAL MEANING AND WHEN VIEWED IN CONTEXT ARE ALL NOT ACTIONABLE SINCE THEY ARE OPINIONS PROTECTED UNDER THE FIRST AMENDMENT

Brackney claims in her Eighth Cause of Action that Boyles "on or about September 20, 2021" (Doc. 1 ¶ 216) authorized and published several press releases and made comments regarding his termination of Brackney's *at will* employment contract with the City in his capacity as City Manager. In ¶ 217 of her Complaint, she lists the "particular statements" by Boyles, each of which were regarding a matter of public concern—the termination of the police chief—protected under the First Amendment to the Constitution. Additionally, the claimed statement relied on by Plaintiff by Boyles as City Manager at the September 20, 2021 public City Council meeting if it had even been made regarding his reasoning for termination of her as the police chief was before "the governing body of the locality" concerning a matter properly before such body. Boyles is entitled to statutory immunity pursuant to § 8.01-223.2 *Va Code Ann.* (1950) as to each of the particular statements Brackney alleges. In her response brief, Brackney limits her response to Boyles's claim to statutory immunity to an off point assertion that Boyles and the other defendants are not entitled to sovereign immunity. She does not discuss or refute Boyles's entitlement to statutory immunity under § 8.01-223.2 *Va Code Ann.*

(1950) for his statements regarding the matter of public concern and his response at public City Council meetings to City Council member's questions about the reasoning behind his decision to exercise as City Manager the City's contract right to terminate without cause Plaintiff's *at will* employment contract as well as his response to community and media questions concerning his reasoning.

Brackney's response brief in opposition to Boyles's Motion to Dismiss her defamation claim does not dispute that she was a public figure. *Henry v. Collins*, 380 U.S. 356 (1965). Nor does she dispute that she is required to allege facts, as opposed to the mere conclusions of law she asserts in her Complaint, in order to state a plausible claim that any of the quoted particular statements she relies on by Boyles were made with the required actual malice by him. Aside from her conclusory allegation of actual malice by Boyles, she identifies no facts actually alleged in her Complaint supporting actual malice by Boyles in her brief. She complains in response brief about Boyles's review of the PBA survey as part of his decision-making process. She fails to note that she attaches the PBA survey as Exhibit N (Doc. 1-14) to her Complaint, thereby incorporating it into her Complaint. While Boyles's comment that in his opinion PBA representative Michael Wells's purpose in conducting the PBA survey was biased and a "mission" to attempt to get Brackney terminated supports an inference that he questioned the PBA's motivation, Boyles as City Manager simply could not disregard the results of the PBA survey, earlier internal CPD survey, or responding officers' comments. The PBA survey revealed information pertaining to the state of the police department, which Boyles was responsible for supervision of under §5.01 of the City Charter. Reviewing the results of the CPD internal and PBA surveys brought to his attention, which she claims Boyles in his City decision-making capacity as City Manager questioned the motives of, does not support an allegation of malice but rather was part of his duty as City Manager.

In her response brief, Brackney does not dispute that the exhibits she incorporated into her Complaint regarding Boyles's claimed defamatory statements in a 9/3/2021 City Press Release she relies on as the basis of her allegations in ¶¶ 217 (A & B) (Brackney Ex. A Doc. 1-1) and Boyles's statements in his 9/17/2021 *Daily Progress* Op-Ed she relies on for the basis of ¶ 217 (D) were not copies of the actual 9/3/2021 Press Release (actually a newspaper article) or an accurate copy of Boyles's 9/17/2021 *Daily Progress* Op-Ed. Further, she does not contest with respect to the 9/3/2021 Press Release and her allegation in ¶ 217 (B) that the Press Release does not even include, contrary to her allegation, a statement by Boyles that she was "not a good fit."

Brackney's response brief does not contest the authenticity of Boyles's Exhibits 1-6 (Doc. 21-1 thru 21-6) and provides no authority or argument opposing consideration by the Court in evaluating Boyles's Motion to Dismiss of his exhibits since they are all integral to Brackney's Complaint allegations and were either incorporated by Brackney pursuant to Rule 10(c) F.R.C.P. into the Complaint (9/3/2021 City Press Release & 9/17/2021 *Daily Progress* Op-Ed by Plaintiff) or a public record in the case of Boyles Exhibit 6 9/20/2021 City Council Meeting recording of Boyles's statements at the meeting. As a threshold matter, the public record recording of the 9/20/2021 City Council meeting reflects the statements actually made and not made by Boyles that Brackney alleges as the basis of ¶ 217 (E) of her Complaint (Boyles Ex. 6 Doc. 21-6). The Court properly considers Boyles Exhibits 1-6 (Doc. 21-1 thru 21-6) in ruling on Boyles's Motion to Dismiss.

In an attempt to support her claim that Boyles's particular alleged statements she quotes and underlines in paragraphs 217 (A-E) were defamatory in their "plain and natural meaning," she cites *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127 (2003). Brackney argues in her brief, in an effort to support her claim of defamatory statements as to Boyles's statements in the 9/3/2021 Press Release, 9/17/2021 *Daily Progress* Op-Ed. or at the 9/20/2021 City Council Meeting, that

> "These defaming statements charge that Plaintiff is 'unfit' to perform her duties; one of integrity in the discharge of her duties, and severely, negatively impact her reputation and profession." *Id.* The phrases describing Plaintiff and her role as police chief as not a "good fit"; "not knowledgeable"; not the "right culture"; "untrustworthy"; "unable to guide"; not the "right feel and function"; not an "effective leader"; not "good"; and "causing others to leave." (Doc. 54 p. 11).

These quoted phrases in context, however, were never stated in the 9/3/2021 Press Release, 9/17/2021 Op-Ed, or at the 9/20/2021 public hearing by Boyles. The simple explanation for Plaintiff's omission of a citation in her brief as to where in her Complaint and incorporated exhibits Boyles ever made these response brief claimed statements is that the actual documents reflect that he did not. The actual statements by Boyles in the 9/3/2021 Press Release and 9/17/2021 Op-Ed and alleged he made at the 9/20/2021 public City Council meeting statement when considered in context not only were not defamatory in their plain and actual meaning, they also were not actionable expressions of his opinions and viewpoint. The City Manager's decision as the City's only authorized person to terminate the *at will* police chief reasoning that she was "not a good fit" (aside from the fact that Boyles did not even make that statement in the 9/3/2021 Press Release or comments alleged at the 9/20/2021 City Council Meeting) simply does not equate in their plain and natural meaning to someone being "unfit" to perform their profession as argued in Plaintiff's response brief, when considered in the context of the entire Press Release and Op-Ed. While *Tronfeld v. Nationwide Mutual Ins. Co.*, 272 Va. 709 (2006) relied on by Brackney does hold that actionable per se defamatory words include "those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties," Boyles's actual statements relied on by Brackney in context do not do so. An opinion that someone is not a good fit as an employee does not infer or equate to being "unfit." Boyles's actual statements pertaining to his reasoning (not reason) behind his decision to exercise is the City's right under Brackney's *at will* employment contract

simply is not analogous to the couple of the actionable statements found by the Virginia Supreme Court in *Fuste*, 265 Va. at 183 (that a doctor "abandoned their patients" and that there were "concerns about their competence") and are more akin to those found by the Virginia Supreme Court in *Fuste*, 265 Va. at 132 (that the doctor left the practice "suddenly" was "unprofessional" and "uncooperative") to not even be defamatory since the statements were either dependent on the speaker's viewpoint and were therefore expressions of opinion under *Chaves v. Johnson*, 230 Va. 112, 119 (1985) or did not prejudice the doctors in their profession when taken in their plain and natural meaning.

Contrary to Brackney's claim in her response brief at page 11, Boyles nowhere in the Press Release, Op-Ed, or City Council meeting she relies on, stated or insinuated that Brackney lacked integrity, was not "knowledgeable," not the right "culture," or made any of the other characterizations she alleges as to Boyles and the other two individual defendants in her response brief. In fact, Boyles actually stated, when viewed in context in the 9/3/2021 City Press Release, that Brackney **was** knowledgeable (referring in the Op-Ed to Brackney as a leader "knowledgeable") and that simply in his opinion new leadership was required "to **continue** the City's progress toward building a new culture and climate" she had begun within the department (Boyles Exhibit 4 Doc. 21-4).

Brackney's claim in her response brief apparently in support of her allegation in ¶ 217 (C) about a 8/20/2021 claimed reference by Boyles to an 8/20/2021 City Press Release as "her letter" (admitted by her in her Complaint as actually an edited collaboration written by **her** and others) that "for example, Boyles lied on August 20, 2021 when he referred to a letter as Plaintiff's" makes no sense since that is the same date as the publication . While the 9/3/2021 City Press Release (Exhibit 4, Doc. 21-4) by the City does refer to the 8/20/2021 City Press Release as "her letter" without detailing who also collaborated on it according to her Complaint – the Press Release, far from being

defamatory, in plain and natural meaning is actually complimentary and explanatory of her actions disciplining certain police officers, all of which were acknowledged and approved by Boyles as City Manager. Apparently from her response brief, her real complaint is that City Manager Boyles did not want her to publicly play the tapes and as City Manager refused to allow her to do so. As City Manager pursuant to Charlottesville City Code, Boyles had the right to do so and explained why in Brackney's incorporated Exhibit S to her Complaint. (Doc. 1-19).

In Brackney's response brief, she does not explain how the particular statement she quotes in ¶ 217 (E) of her Complaint when considered in context that she alleges Boyles supposedly made at the 9/20/2021 public City Council meeting regarding reasons for exercising the contract right of the City as City Manager to terminate without cause Brackney's *at will* employment contract Boyles's alleged, is defamatory. This is especially so since the claimed comments she alleged Boyles made at the 9/20/2021 public City Council meeting—see Boyles Ex. 6—were prefaced in context by his statement of reasoning "I in no way intend to malign her character, professional acumen or ability to perform." The statement she alleges that Boyles made in ¶ 217 (E) at the 9/20/2021 City Council meeting, as well as his other statements she alleges when viewed in their plain and natural meaning similar to the majority of the alleged defamatory statements found in *Fuste*, 265 Va. at 133 by the Virginia Supreme Court to be not actionable for among other reasons as apt here they were dependent on speakers' viewpoints and are expressions of opinion. Finally, Brackney fails to concede and apparently persists in her baseless allegation that the statement she alleges Boyles made was ever made by Boyles at the meeting despite the opportunity to review the public recording of the 9/20/2021 City Council meeting, which reflects that the statement she relies on as the basis to ¶ 217 (E) was not even made by Boyles at the meeting. (Boyles Ex. 6 Doc. 21-6).

Wherefore, Defendant respectfully requests that the Court for reasons previously stated by him and other individual defendants in their briefs as to whom Plaintiff has attempted to allege this cause of action grant his motion to dismiss Plaintiff's defamation claim and award him reasonable attorney's fees under § 8.01-223.2, if applicable.

## 3. BRACKNEY'S NINTH CAUSE OF ACTION FAILS TO ALLEGE A VIRGINIA STATUTORY BUSINESS CONSPIRACY CLAIM AGAINST BOYLES BECAUSE THE STATUTE DOES NOT APPLY TO CLAIMS FOR INJURIES TO THE EMPLOYMENT INTEREST OR PERSONAL INJURIES BRACKNEY PLEADS AND BECAUSE IT IS BARRED BY THE DOCTRINE OF INTRACORPORATE IMMUNITY

At the outset, Brackney's Response Brief in Opposition to Boyles's Motion to Dismiss her attempted Ninth Cause of Action, which attempts to allege a supplemental jurisdiction-based Virginia statutory business conspiracy claim, fails to address or oppose Boyles's argument that the claim as alleged in her Complaint is barred by the doctrine of intracorporate immunity. In her response brief (Doc. 54 pp. 15-16) Brackney now improperly attempts to amend her Complaint and add a claim that "Defendants conspired, combined, associated, and/or agreed to mutually undertake or concert together, **along with others**, for the purpose of willfully and maliciously injuring Plaintiff's reputation." She supports this argument by citing ¶ 238 in her Complaint. However, in ¶ 238 of her Complaint she **does not** allege "along with others." Under settled law, Brackney cannot amend her Complaint through briefing or oral advocacy. See *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F. 3d 175, 184-85 (4th Cir. 2013); *Roberts v. Life Insurance Company of North America*, 2020 WL 5518481 (M.D.N.C. 9/14/2020) (noting that a plaintiff cannot use their response brief to amend their Complaint).

Tellingly, Brackney does not cite or discuss a single case—state or federal—in opposition to Boyles or other defendants' Motions to Dismiss this cause of action. She does not dispute that in

*Andrews v. Ring*, 266 Va. 311, 318-20 (2003), the Virginia Supreme Court held that § 18.2-499 and § 18.2-500 *Va Code Ann.* (1950) only apply to business and property interests and do not apply to personal or employment interests. Brackney does not contest that in fact in *Andrews*, the Virginia Supreme Court stated that § 18.2-499 *Va Code Ann.* (1950) defined and limited a statutory business conspiracy to where the claimed conspirators "willfully, and maliciously, injuring another in his reputation, trade, business, or profession" and that within the statute, the term "reputation" and that its association with "trade, business, or profession" in the statute requires the **exclusion** of personal reputation, business interest, and employment from the scope of the statute's coverage. *Andrews* at 319. Brackney does not cite any authority in the Fourth Circuit contrary to its holding in *Buschi v. Kirven*, 775 F. 2d 1240, 1259 (4th Cir. 1985) approved by the Virginia Supreme Court in *Andrews* reaching a similar holding.

In a futile attempt apparently to claim proximately caused damages in addition to the employment-related and personal injury damages actually asserted in her Complaint in ¶¶ 280 & 281, Brackney in her response brief now argues (without citation to any paragraph in her Complaint where she made such a claim, which she did not) that

> "Defendants conspired together to tarnish Plaintiff's reputation because of her business as a consultant, author, spokesperson/public speaker, and professor. For fear of their own exposure of racist, sexist, and discriminatory acts, they aimed to discredit and impeach Plaintiff as to interfere with her student enrollment, readers, future employers, customers, and listeners, therefore negatively impacting her property interest and profits." (Doc. 54 p. 16).

Although the alleged damage to her "property interest and profits" (for which Brackney cites no authority) is insufficient to state a Virginia statutory business conspiracy claim since the claimed malicious conduct was directed not at her business interest, Brackney is not in any event permitted to amend her Complaint in her response brief or through oral argument. *S. Walk at Broadlands*

*Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F. 3d 175, 184-85  (4th Cir. 2013). Plaintiff's response brief also misstates and alters what she actually alleged in her Complaint in an effort to even plead a conspiracy (Doc. 54 p. 16) (by claiming purportedly based on her allegations in ¶¶ 54-59, 61, and 239 of the Complaint) that "on June 13, 2021 Snook, Boyles and Hill convened and met." In fact, her Complaint alleged that Boyles only was advised on 6/13/2021 of a meeting the next day and does not allege that Boyles met on the day or that the meeting even took place (see Doc. 1 ¶¶ 59 & 239). Further, in her response brief (Doc. 54 p. 16) she cites to ¶ 61 in her Complaint but alters, adds to, and expands the scope of her actual allegations in that paragraph in her Complaint. While in ¶ 61 of her Complaint concerning the PBA survey (which she incorporated into her Complaint as Ex. N (Doc. 1-14)) she alleged "specifically" that Defendant Bellamy Brown and Defendant Michael Wells had generated the PBA survey, her response brief improperly tries to amend and expands the scope of her actual limited allegation in ¶ 61 by claiming generally that "the Defendants" generated it. She also attempts in her response brief to add the PBA as a defendant. Finally, her response brief also specifically adds to ¶ 61 a quoted phrase "current feelings" which was not alleged in ¶ 61.

For the reasons stated herein and previously by Boyles as well as those by other defendants in support of their respective Motions to Dismiss the Ninth Cause of Action, Boyles respectfully requests the Court grant his Motion to Dismiss this claim with prejudice.

Wherefore, Charles "Chip" Boyles, by counsel, respectfully requests that the Court dismiss the Complaint and award him his costs and attorney's fees under § 8.01-223.2 *Va. Code Ann.* (1950).

CHARLES "CHIP" BOYLES,
FORMER CITY MANAGER OF CHARLOTTESVILLE
By Counsel

s/Richard H. Milnor
Richard H. Milnor, Esquire (VSB #14177)
Zunka, Milnor & Carter, Ltd.
414 Park Street
P O Box 1567
Charlottesville VA 22902
Telephone: (434) 977-0191
Facsimile:  (434) 977-0198
rmilnor@zmc-law.com
  *Counsel for Charles "Chip" Boyles,*
  *Former City Manager with Charlottesville*


## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November, 2022, I electronically filed the foregoing

Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to all counsel of record.


s/Richard H. Milnor
Richard H. Milnor, Esquire (VSB #14177)
Zunka, Milnor & Carter, Ltd.
414 Park Street
P O Box 1567
Charlottesville VA 22902
Telephone: (434) 977-0191
Facsimile:  (434) 977-0198
rmilnor@zmc-law.com
  *Counsel for Charles "Chip" Boyles,*
  *Former City Manager of Charlottesville*